1

Barbara Quinn Smith (Ohio Bar 0055328)
(*pro hac vice*)

2

**MADDOX HARGETT & CARUSO**
9853 Johnnycake Ridge Road

3

Suite 302
Mentor, OH 44060

4

Telephone: 440-354-4010
Facsimile: 440-848-8175

5

bqsmith@mhclaw.com
(Additional Counsel listed below)

6

7

Attorneys for David Baba and Ray Ritz, Named Plaintiffs and all others similarly situated

8

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9

**SAN JOSE DIVISION**

10

11

DAVID BABA,

CASE NO:  C 09 5946-RS

12

    and

13

RAY RITZ,

14

**NAMED PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO HEWLETT PACKARD
COMPANY'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT, OR IN
THE ALTERNATIVE, TO STRIKE
PLAINTIFF'S NATIONWIDE CLASS
ALLEGATIONS FOR THEIR WARRANTY
AND UNJUST ENRICHMENT CLAIMS.**

15

Individually and on behalf
of all others similarly situated,

16

        PLAINTIFFS,

17

18

        -vs-

19

HEWLETT PACKARD COMPANY,

20

A Corporation,

Date: May 27, 2010
Time: 1:30 PM

21

        DEFENDANT.

Court: United States Courthouse (San Francisco)
Place: Courtroom 3, 17th Floor

22

Before: The Honorable Richard G. Seeborg

23

24

25

26

27

28

INTRODUCTION……………………………………………………………………… 1

ISSUES TO BE DECIDED …………………………………………………………….. 2

ARGUMENT OF LAW …………………………………………………………………… 2

I.      LEGAL STANDARD ..................................................................................................4

II.     NAMED PLAINTIFFS HAVE ADEQUATELY STATED CLAIMS UNDER
        THE UCL AND CLRA. ...............................................................................................4

        A.      Named Plaintiffs Have Adequately Pleaded That HP Knowingly Sold
                Defective Computers. .....................................................................................5

                1.      Named Plaintiffs Have Specifically Alleged That HP Had
                        Knowledge Of The Defect At The Time Of Sale.................................5

                2.      Named Plaintiffs' Allegations Concerning HP's Knowledge of the
                        Defect Satisfy Rule 9(b)'s Requirement That Knowledge Be
                        Pleaded Generally...............................................................................5

        B.      HP Had A Duty To Disclose The Defect ..........................................................7

                1.      HP Has Exclusive Knowledge of Material Facts Not Known to the
                        Plaintiff. .............................................................................................8

                2.      HP Actively Concealed the Defect.......................................................8

                3.      HP's Statements Concerning the Functionality and Condition of
                        the Subject Computers Were Partial Representations ..............................10

        C.      Named Plaintiffs have Pleaded Facts showing that HP's Affirmative
                Misrepresentations Violated the UCL and CLRA.................................................13

                1.      Named Plaintiffs Adequately Plead That They Relied on the
                        Affirmative Misrepresentations Identified in The Complaint. ...................13

                2.      Named Plaintiff Has Adequately Pleaded The Falsity of HP's
                        Representations Concerning Its Willingness to Repair The
                        Computers...........................................................................................15

III.    NAMED PLAINTIFFS HAVE PROPERLY PLEADED CLAIMS FOR
        BREACH   OF EXPRESS AND IMPLIED WARRANTY...............................................16

        A.      Named Plaintiff Baba States A Claim for Breach of Implied Warranty ..............16

        B.      Named Plaintiff Baba States A Claim For Breach Of Express Warranty .............17

        C.      Named Plaintiff Ritz Has Adequately Stated A Claim For Breach of
                Express and Implied Warranty. ......................................................................19

IV.     NAMED PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR
        UNJUST ENRICHMENT ..............................................................................................20

V.      HP FAILS TO ASSERT AN APPROPRIATE BASIS FOR STRIKING NAMED
        PLAINTIFFS' CLASS ALLEGATIONS. .....................................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ................................................. 4

*American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291 (Cal. App. 2d Dist. 1995) ................................................................................................................... 17

*Azimi v. Ford Motor Co.*, 977 F. Supp. 847 (N.D. Ill. 1996) ............................................. 13

*Baldain v. Am. Home Mortg. Servicing, Inc.*, 2010 U.S. Dist. LEXIS 5671 (E.D. Cal. 2010) .................................................................................................................................. 12

*Beverly Finance Co. v. American Casualty Co.*, 273 Cal. App. 2d 259 (Cal. App. 2d Dist. 1969) .................................................................................................................................. 12

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) .................................................... 6

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ............................................. 4

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................ 4

*Country Shindig Opry, Inc. v. Cessna Aircraft Co.*, 780 F.2d 1408 (8th Cir. 1986) ......... 13

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006). ................. 5

*Dewey v. Volkswagen AG*, 558 F.Supp.2d 505 (D.N.J. 2008) ............................................ 13

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (Cal. 1997) ...................... 14

*Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................... 8

*Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246 (9th Cir. 1997) ...................................... 4

*Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009) ......................... 10

*Hibbs-Rines v. Seagate Tech., LLC.*, 2009 U.S. Dist. LEXIS 19283 (N.D. Cal. March 2, 2009) .............................................................................................................................. 22, 23

*Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) .................................... 12

*Hovsepian v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 117562 (N.D. Cal.  2009) ................... 7

*In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009) ................................................ 14

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d, 609 (N.D. Cal. 2007) .................................................................................................................................. 22

*Islip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19 (Cal. App. 2d Dist. 2007)........17

*Kazemi v. Payless Shoesource, Inc.*, 2010 U.S. Dist. LEXIS 27666 (N.D. Cal. 2010) ....23

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006)........................21

*Keilholtz v. Lennox Hearth Prods.*, 2010 U.S. Dist. LEXIS 14553 (N.D. Cal. 2010) ......21

*Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723 (2000) ....................................21

*Malcolm v. JPMorgan Chase Bank, N.A*, 2010 U.S. Dist. LEXIS 23770
    (N.D. Cal. 2010) ...........................................................................21

*Mauro v. GMC*, 2008 U.S. Dist. LEXIS 93897 (E.D. Cal. 2008)....................................22

*Navistar International Corp. v. Hagie Mfg. Co.,* 1987 U.S. Dist. LEXIS 4126 (N.D. Ill.
    1987)..........................................................................................13

*New London County Ins. Co. v. Broan-NuTone, LLC*, 21 Mass. L. Rep. 272 (Mass. Super.
    Ct. 2006)....................................................................................20

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415 (Cal. App. 1st Dist.
    1988)..........................................................................................10

*Noce  v. Wible,* 1983 Ohio App. LEXIS 12436 (Ohio Ct. App., Lake Cty 1983) ............13

*Nomo Agroindustrial SA DE CV v. Enza Zaden N. Am., Inc.,* 492 F. Supp. 2d 1175 (D.
    Ariz. 2007)..................................................................................16

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...........................21

*Norman Gershman's Things to Wear, Inc. v. Mercedes-Benz of North America, Inc.,* 1989
    Del. Super. LEXIS 110 (Del. Super. Ct. 1989) ....................................13

*Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964 (N.D. Cal 2008) ....................5, 7, 8

*Pareto v. F.D.I.C*, 139 F.3d 696 (9th Cir. 1998) ..................................................4

*Shein v. Canon U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 94109 (C.D. Cal. 2009) ...............23

*Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190 (N.D. Cal. 2008) .................6

*Thorpe v. Abbott Labs, Inc.*, 534 F. Supp. 2d 1120 (N.D. Cal. 2008)..............................23

*Tietsworth v. Sears,* 2009 U.S. Dist. LEXIS 98532  (N.D. Cal. 2009 ) ...........................17

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ..................................4

*Valencia v. Merck & Co.*, 2009 U.S. Dist. LEXIS 103228 (E.D. Cal. 2009) .................10

1      *Velasquex v. HSBC Finance Corp.*, 2009 U.S. Dist. LEXIS 5428 (N.D. Cal. 2009) .......23

**Statutes**

A.R.S. § 47-2313 ...............................................................................................17, 18

A.R.S. §47-1304 ...........................................................................................................19

ALM GL ch. 106, § 2-318...........................................................................................19

**Rules**

Fed. R. Civ. P. 12(f). .................................................................................................22

Fed. R. Civ. P. 15(a) .....................................................................................................4

Fed. R. Civ. P. 8(a). ......................................................................................................4

Fed. R. Civ. P. 9(b)........................................................................................................6

## **INTRODUCTION**

The tx2000 and tx2500 computers at issue in this litigation are defective.  The design of the computer, coupled with its' "tablet" or "touch screen" functions, results in the cursor jumping randomly to the lower right corner of the screen.   As one might expect, this "jumping cursor" significantly interferes with normal operation and use of the computer.

The allegations of the Complaint detail the problem with the computer, as well as HP's staunch refusal to adequately address that problem. Named Plaintiffs David Baba, a resident of Arizona, and Ray Ritz, a resident of Massachusetts, both purchased this computer, and both experienced the jumping cursor within the one year warranty period.   Both contacted HP in regard to the problem, and neither was offered an appropriate repair.   More importantly, and despite the fact that HP had received numerous complaints about the jumping cursor, neither received an acknowledgement from HP that the computer was in fact defective.  Instead, each was led through a series of "fixes" that HP knew could not, and would not, repair the problem.

Named Plaintiffs have brought this action as a class action, because it is clear that virtually every purchaser of these computers is affected by this problem.   Internet complaints, a small sample of which are reproduced in the Complaint, are evidence of the depth of the problem as well as HP's refusal to acknowledge the problem.

Named Plaintiffs have asserted claims under the Unfair Competition Law, Business & Professions Code § 17200 *et seq.* ("UCL"), the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment.   HP is now before this Court seeking dismissal of each of those claims.  It also requests that Named Plaintiffs' class allegations pursuant to Fed. Civ. R. 23 be stricken from the First Amended Complaint ("FAC") (Doc. No. 10).   HP has failed to articulate sufficient grounds for either request.

**ISSUES TO BE DECIDED**

1.  Whether Named Plaintiffs Have Adequately Pleaded Fraud With Respect To Their Claims Under the UCL and CLRA;

2.  Whether Named Plaintiffs have adequately alleged "knowledge" as required by Fed. R. Civ. P. 9(b);

3.  Whether HP had a duty to disclose the defect to purchasers of the subject computers;

4.  Whether Named Plaintiffs have adequately alleged that the affirmative misrepresentations identified in the complaint are false, and that they relied upon them;

5.  Whether a claim for breach of implied warranty can be dismissed under Rule 12(b)(6) for lack of privity between the purchaser and the manufacturer without further discovery  into the nature of the manufacturer's relationship with its retailers;

6.  Whether a claim for breach of express warranty can be dismissed under Rule 12(b)(6) where there are questions of fact concerning whether  a proper repair was made to the product as contemplated by the warranty, and whether the manufacturer was given enough opportunities to repair the product;

7. Whether a claim for breach of implied warranty can be dismissed under Rule 12(b)(6) for lack of notice during the warranty period where (1) the warranty itself is silent on notice and (2) Massachusetts law requires a warrantor to prove it was prejudiced by a lack of timely notice;

8.  Whether Named Plaintiffs may assert a claim for unjust enrichment as an alternative to their breach of warranty claim; and

9.  Whether class action allegations are subject to a Fed. R. Civ. P. 12(f) Motion to Strike.

**ARGUMENT OF LAW**

Named Plaintiffs allegations are very simply stated:  HP knew at the time Named Plaintiffs purchased the subject computers that those computers contained a defect, and it failed to inform them of this fact.  HP not only sold them defective computers, it simultaneously represented to them, by the express language of its warranty, that the computers were free from defects.  When Named Plaintiffs contacted HP about the problem, it directed them to perform a series of meaningless software and firmware adjustments that it knew would not resolve the

1    problem.  In Named Plaintiff Baba's case, it directed him to take the computer to a third party

2    who told him that the problem could not be repaired.  HP then, under color of "repairing" his

3    computer, decreased the speed of the computer's processor without informing him.  Named

4    Plaintiffs allege that these experiences are typical of those of Class Members.

5        HP attacks each of Named Plaintiffs' claims, but fails to assert any colorable basis for

6    dismissal.  Named Plaintiffs have, contrary to HP's assertion, specifically pleaded that HP had

7    knowledge of the defect at the time that Named Plaintiffs purchased their computers.  Moreover,

8    HP had a duty to disclose that defect, both pre-sale and when it was contacted for warranty

9    service.  This duty arises because HP was in exclusive possession of information concerning the

10   defect and its cause, it actively concealed information about the defect, and it told half-truths

11   about the condition and functionality of the computers.  With respect to the affirmative

12   misrepresentations made by HP, Named Plaintiffs have adequately pleaded both that those

13   misrepresentations were false and that they relied upon them.

14       HP fares no better in its request for dismissal of Named Plaintiffs' warranty claims.  In

15   fact, the majority of HP's arguments on this point stray well past the bounds of a Motion to

16   Dismiss.  Named Plaintiff Baba gave HP more than ample opportunity to repair his computer,

17   and it repeatedly failed to do so.  Plaintiff Ritz did not notify HP of the problem with his

18   computer until after his warranty had expired, but under Massachusetts law, a lack of timely

19   notice is only a defense to a breach of warranty claim if the defendant proves that it was

20   prejudiced thereby.  HP has made no allegation that it was prejudiced, nor would such a claim be

21   appropriate for resolution in a Motion to Dismiss.

22       California law will apply to Named Plaintiffs' claims for unjust enrichment.  Plaintiffs

23   plead this claim as an alternative to the breach of warranty claim.  HP's claim that Mr. Baba's

24   purchase of the computer did not confer any benefit upon it cannot be resolved without inquiry

25   into the nature of HP's relationship with its retailers.

26       HP's Rule 12(f) Motion to Strike Named Plaintiffs' class allegations, as those allegations

27   pertain to the claims for breach of warranty and unjust enrichment, is misplaced for several

28   reasons, not the least of which is that there is nothing "redundant, immaterial, impertinent or

scandalous" about those allegations.  These types of motions are routinely denied, as this one should be.

## I.   LEGAL STANDARD

The Ninth Circuit disfavors granting Rule 12(b)(6) motions. *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)("The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."). Indeed, the Ninth Circuit says dismissal is proper only in "extraordinary" circumstances. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). *Accord Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

In evaluating HP's Rule 12(b)(6) motion, this Court must construe the complaint in the light most favorable to Plaintiff (*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996)), and accept as true all allegations in the complaint and the reasonable inferences drawn therefrom (*Pareto v. F.D.I.C*, 139 F.3d 696, 699 (9th Cir. 1998)). As long as Named Plaintiffs have pled a "short and plain" statement of his claim, their complaint should be upheld. *See* Fed. R. Civ. Proc. 8(a). In the unlikely event that this Court finds Named Plaintiffs failed to state a claim, leave to amend should be "freely given." Fed. R. Civ. P. 15(a); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

## II.   NAMED PLAINTIFFS HAVE ADEQUATELY STATED CLAIMS UNDER THE UCL AND CLRA.

HP seeks a wholesale dismissal of Named Plaintiffs' claims under the UCL, arguing that claim is based upon fraudulent statements or omissions made by HP prior to the sale of the subject computers.  While that conduct is one basis upon which Named Plaintiffs seek to hold HP liable under the UCL, it is not the sole conduct of which Named Plaintiffs complain.  Named Plaintiffs allege that HP also violated the UCL by engaging in "unfair" conduct by continuing to warrant the computers without having the intention to honor that warranty, and by systematically

breaching those warranties.  FAC ¶ 41.  These allegations do not require proof of fraud[1].  For

this reason, even if HP's challenge to Named Plaintiffs' UCL fraud-based claim is successful,

that is not grounds for wholesale dismissal of that claim.

### A.   Named Plaintiffs Have Adequately Pleaded That HP Knowingly Sold Defective Computers.

In arguing that Named Plaintiffs have failed to adequately plead that it knew of the

defects at the time Named Plaintiffs and Class Members purchased the computers, HP ignores

both the plain allegations of the Complaint and the plain language of Fed. R. Civ. P. 9(b).

#### 1.   Named Plaintiffs Have Specifically Alleged That HP Had Knowledge Of The Defect At The Time Of Sale

With regard to HP's knowledge of the defect, Named Plaintiffs have alleged:

> 33.  HP is aware of the defect due to the numerous complaints it
> has received, as well as those posted on the internet including in
> consumer forums on hp.com.

***

> 38.  Despite knowledge of the defect, HP continued to represent to
> Named Plaintiffs and Class Members that the notebooks were "free
> from defects" **at the time of sale**.

FAC ¶ 33, 38 (emphasis supplied).  In claiming that Named Plaintiffs have failed to allege that it

had knowledge of the defect at the time of sale, HP ignores paragraph 38 of the Complaint, in

which Named Plaintiffs allege exactly that.

#### 2.   Named Plaintiffs' Allegations Concerning HP's Knowledge of the Defect Satisfy Rule 9(b)'s Requirement That Knowledge Be Pleaded Generally.

HP relies upon *Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964 (N.D. Cal 2008) to

suggest that allegations that it was aware of the defect through the complaints that it received and

through internet postings, including those on its own website, are insufficient to impute it with

---

[1] An act or practice is "unfair" for purposes of the UCL if the consumer injury is substantial, is
not outweighed by any countervailing benefits to consumers or to competition, and is not an
injury the consumers themselves could reasonably have avoided.  *Daugherty v. American
Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 839 (2006).

knowledge of the defect for purposes of a Motion to Dismiss.  This position is inconsistent with

Fed. R. Civ. P. 9(b), which states, in relevant part:

> (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or
> mistake, a party must state with particularity the circumstances
> constituting fraud or mistake. Malice, intent**, knowledge, and
> other conditions of a person's mind may be alleged generally**.

Civ. R. 9(b)(emphasis supplied).  The purpose of the rule is to ensure that the allegations

contained in a complaint provide a defendant with sufficient "notice of the particular misconduct

which is alleged to constitute the fraud charged so that they can defend against the charge and

not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014,

1019 (9th Cir. 2001) (citation and internal quotations omitted).  As Judge Henderson has noted,

the Ninth Circuit has interpreted Rule 9(b) to require nothing more:

> Under Rule 9(b), knowledge "may be alleged generally," and the
> Ninth Circuit has explained that, in non-securities cases, "plaintiffs
> may aver scienter generally, just as the rule states - that is, **simply
> by saying that scienter existed**." *In re GlenFed, Inc. Sec. Litig.*,
> 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc) (quoted with
> approval in *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.
> 2007) (en banc)).

*Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190, 8-9 (N.D. Cal. 2008) (emphasis

supplied).

Thus, there is no requirement that specific facts regarding the source of a defendant's

knowledge be pleaded.  *Oestricher* cannot fairly be read to impose a more stringent standard of

pleading than that noted in *Stickrath.*  In *Oestreicher,* the court was troubled not by the allegation

that the defendant was aware of a product defect through internet complaints, but by the lack of

an allegation that it had this knowledge at the time it sold the product to the plaintiff.  The full

text of the footnote cited by HP is as follows:

> "Random anecdotal examples of disgruntled customers posting
> their views on websites at an unknown time is not enough to
> impute knowledge upon defendants. There are no allegations that
> Alienware knew of the customer complaints at the time plaintiff
> bought his computer."

1    *Oestricher,* 544 F. Supp. at 975.  Clearly, the instant case is distinguishable from *Oestricher.*

2    Named Plaintiffs have pleaded all that they are required to in order to properly plead that HP had

3    knowledge of the defect when Named Plaintiffs and Class Members purchased the computers.

4          **B.   HP Had A Duty To Disclose The Defect**

5          Named Plaintiffs have alleged sufficient facts establishing that HP had a duty to disclose

6    the fact that the computer's cursor would jump randomly around the screen, rendering the

7    computer practically useless.  A duty to disclose arises under four circumstances:

> A plaintiff may "successfully pursue a CLRA claim [based on a
> fraudulent omission], despite *Daugherty* and *Bardin,* if [the
> manufacturer] was 'obliged to disclose' the potential for problems."
> *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal.
> 2007). A duty to disclose exists if one of the following four
> circumstances is present: (1) the defendant is in a fiduciary
> relationship with the plaintiff; (2) the defendant has exclusive
> knowledge of material facts not known to the plaintiff; (3) the
> defendant actively conceals a material fact from the plaintiff, or (4)
> the defendant makes partial representations but also suppresses
> some material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326,
> 337, 60 Cal. Rptr. 2d 539 (1997).

15   *Hovsepian v. Apple, Inc.,* 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. 2009)[2].  In this instance, all

16   but the first are met.

---

22   [2] HP incorrectly asserts that *Daugherty*  held that omissions may form the basis of a CLRA claim

23   only when either (1) safety concerns are implicated or (2) the omission is contrary to a statement
     actually made by the defendant.   To the contrary, the *Daugherty* court, like the *Hovsepian* court,

24   specifically recognized that a CLRA claim may be based on information that the defendant was
     obligated to disclose:

> In short, although a claim may be stated under the CLRA in terms
> constituting fraudulent omissions, to be actionable the omission
> must be contrary to a representation actually made by the
> defendant, or an omission of a fact the defendant was obliged to
> disclose.

28   144 Cal. App. 4th at 835.

**1. HP Has Exclusive Knowledge of Material Facts Not Known to the Plaintiff.**

Materiality exists if the omitted information would cause a reasonable consumer to behave differently if he or she were aware of the information. See *Oestreicher*, 544 F. Supp. 2d at 971.  See also *Falk v. General Motors Corp*., 496 F. Supp. 2d 1088, 1095(N.D. Cal. 2007) ("Materiality, for CLRA claims, is judged by the effect on a 'reasonable consumer.'"). *Hovsepian*, 2009 U.S. Dist. LEXIS 117562.

Here, Named Plaintiffs have alleged:

> 35. The fact that the notebooks are defective is and was material to Named Plaintiffs and Class Members.

> 36. The fact that HP is not properly repairing the notebooks during the warranty period is and was material to Named Plaintiffs and Class Members.

> 37.  HP was in the exclusive possession of the information regarding the defect, which was material to Named Plaintiffs and Class members, and HP had a duty, under all of the circumstances, to disclose the material facts to Named Plaintiffs and members of the Class.

FAC ¶ 35-37.  An allegation that a manufacturer had superior or exclusive knowledge of a material fact is sufficient to establish duty and state a claim under the CLRA.  *See, Falk,* 496 F. Supp. 2d at 1096-1097 ("Since, as plaintiffs argue, GM 'was in a superior position to know' that its speedometers might fail, plaintiffs successfully state a CLRA claim for omission of a material fact which lay within GM's exclusive knowledge. This alone defeats GM's 12(b)(6) motion to dismiss for failure to state a claim.")

**2. HP Actively Concealed the Defect.**

A duty to disclose a known defect arises where the defendant actively conceals a material fact.  Here, Named Plaintiffs allege:

> 23. On information and belief, customers who contact HP about this problem during the warranty period are given a variety of explanations for the problem, none of which actually resolve the problem. Some consumers are told that the problem is caused by the computer's touchpad, and are asked to adjust the sensitivity of

- 8 -

1

> that device. Other consumers are directed to download replacement
> drivers for the touchpad. Still others are told that they must
> perform a system restore, erasing all of their files in the process,
> even though the problem exists out of the box.

2

3

> 24. Consumers who are persistent with HP's customer service and
> are invited to return their notebooks to HP for warranty service
> fare no better. HP seemingly randomly replaces the motherboard,
> digitizer, touchpad, keyboard, LCD screen, fan or hard drive on
> affected computers, all without resolving the problem. In the
> process, it eradicates all of the data on the consumer's hard drive,
> by performing a system restore on the computer's hard drive.

4

5

6

7

> 25. Customers who visit hp.com seeking support find that HP
> employees advise them that "Touchpad is too sensitive. hands are
> brushing the pad while you type"

8

9

10 FAC ¶ 23-25.  The Named Plaintiffs' experiences also indicate that HP attempted to conceal the

11 defect.  Both Named Plaintiffs were directed to perform various software fixes that did not, and

12 could not, resolve the problem.  FAC ¶26, 31.  Named Plaintiffs allege that HP knew these

13 software fixes would not resolve the problem.  FAC ¶ 32.  Named Plaintiff Baba sent his

14 notebook to HP for repair; upon its return, he discovered that HP had reduced the processor

15 speed in an attempt to stop the cursor from jumping:

16

> 29.   HP returned the computer to Mr. Baba with an indication that
> it had replaced the screen on the computer. It did not, however,
> inform him that it had reduced the computer's processor speed to
> 50% of its capacity. The reduction of processor speed is often cited
> by internet complainants as a way to reduce or eliminate the
> jumping cursor, because the slower the processor, the less heat
> produced by the computer, resulting in a slower fan rotation.

17

18

19

20 FAC ¶ 29.  Once Mr. Baba returned the processor speed to its full capacity, the cursor again

21 began jumping.  FAC ¶ 30.

22      These allegations are a sufficient basis upon which to find that HP had a duty to disclose

23 the defect.  Similar allegations were found sufficient in *Falk*:

24

> Plaintiffs support their active concealment claim with several
> different factual allegations. First, the fact that various GM
> customers complained between 2003 and 2007 yet GM never made
> any attempt to notify other customers or effect a recall, suggests
> that GM may have attempted to actively conceal the alleged defect
> in their speedometers. Plaintiffs also argue that "[w]here GM
> replaced the Trucks' speedometers pursuant to warranty provisions,
> GM utilized equally defective speedometers and speedometer
> mechanisms such that the defect was not corrected even though
> GM informed consumers that it was" …. Since plaintiffs provide

25

26

27

28

1

some factual grounds for their claim of active concealment, and
considering that plaintiffs adequately plead a claim that the GM
speedometers were defective, plaintiffs' active concealment claim
survives this Rule 12(b)(6) motion to dismiss.

2

3

*Falk,* 496 F. Supp. 2d at1097.

4

### 3.   HP's Statements Concerning the Functionality and Condition of the Subject Computers Were Partial Representations

5

6

A duty to disclose also arises where a party, having undertaken to provide some

7

information regarding a particular subject, omits other facts which "materially qualify the limited

8

facts disclosed." *Valencia v. Merck & Co.*, 2009 U.S. Dist. LEXIS 103228 (E.D. Cal. 2009).  As

9

one California court explained:

10

Even though there may be no duty upon a vendor to speak upon a
subject affecting the desirability of a sale to which he is a party, if
he does speak, whether voluntarily or in response to an inquiry, he
must make a full disclosure, and may not withhold or conceal any
information within his knowledge bearing upon the subject about
which he speaks, that materially affects the desirability of the
property to be sold.

11

12

13

14

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n,* 205 Cal. App. 3d 1415, 1425 (Cal. App. 1st Dist.

15

1988), cited with approval by *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal.

16

2009).

17

### i.   HP represented that the computers functioned as tablet computers

18

As HP recognizes, Named Plaintiffs allege that HP marketed the computers as tablet

19

computers, and that characteristic was material to Named Plaintiffs and Class Members in

20

making the decision to purchase these computers.  FAC ¶ 19.  Plaintiffs also allege that HP's

21

characterization of the computer is a tablet is misleading.  FAC ¶ 44.  HP takes the position that

22

marketing the computers as "tablets" does not become fraudulent simply because a defect is

23

alleged because the word tablet "does not constitute a representation regarding the quality of the

24

computer's parts, nor is it a representation regarding the consistency or longevity of the

25

computer's operation."  HP Memo.  (Doc. No. 21) at pg. 11.

26

HP is incorrect.  The description, though not false in and of itself, is misleading because

27

it is that very characteristic that results in these computers being defective.  As outlined in the

28

1   complaint, in a tablet computer, the user can operate the computer with a stylus or digital pen, or

2   a fingertip, instead of a keyboard or mouse.  FAC ¶ 19.  This is because the cursor is sensitive to

3   particular types of movement around the screen.  In the case of these computers, that sensitivity

4   results in the cursor being continually drawn to bottom right of the screen due to the rotation of

5   the cooling fan.  FAC ¶ 21.[3]

6        HP's characterization of these computers as tablet computers placed a duty upon it to

7   fully explain that the cursor sensitivity required of a tablet computer rendered the computer

8   virtually unusable because of the location of the cooling fan in this computer.

9    HP also claims that Named Plaintiffs have failed to identify the "who, what, when, where, how

10   and why" with respect to the representation that the subject computers functioned as tablet

11   computers.  As set forth above, Plaintiff describes in detail why the description of the computers

12   as tablets is misleading.

13                      **ii.      HP represented that the computers were "free from defects".**

14        In its warranty, HP represents that "the HP Product and all the internal components of the

15   product you have purchased or leased from HP are free from defects in materials and

16   workmanship under normal use during the Limited Warranty Period."  FAC Ex. B, pg. 3.

17   Plaintiff has alleged that at least by the time Named Plaintiffs' purchased their computers, HP

18   was aware of the jumping cursor, and thus aware that its representation that the product was

19   "free from defects" was no longer true.  FAC ¶ 38.  Under these facts, HP unquestionably had a

20   duty to inform purchasers of the defect.

21        HP, however, takes the position that its representation that the product and its

22   components were "free from defects" does not mean that the product and its components would

23   actually be free from defects.  Rather, HP claims that this language means nothing more than that

24   it will repair any defects that may exist, citing *Hoey v. Sony Elecs. Inc.,* 515 F. Supp. 2d 1099,

25

26   _____

27   [3] Further evidence of this may be found in the fact that when the computer's tablet functions are
    disabled, the problem disappears.   Named Plaintiffs acknowledge that the complaint does not
28   specifically allege this, and can amend the Complaint to specifically so state if the Court believes
    it is necessary.

1   1104 (N.D. Cal. 2007).  The instant case is vastly different from *Hoey*, because there, the express

2   warranty did not contain an express representation that the product would be free from defects.

3   As Judge Whyte explained:

4
5           Plaintiffs seek to bootstrap Sony's express warranty into a
            representation that the VAIO notebooks are defect-free, such that a
            failure to disclose the alleged soldering defect would constitute

6           concealment. Reviewing the language of that warranty, the court
            finds no such representation. **The warranty states only that Sony**

7           **will repair all defects for one year**.  …  Nothing in the warranty
            expressly or impliedly warrants that the computer will be defect-

8           free either during the warranty period or thereafter.

9   *Hoey,* 515 F. Supp. 2d at 1104 (emphasis supplied).  No bootstrapping is required in this

10   instance; HP's warranty explicitly states that the product and its components are "defect free".

11   Once it chose to make that representation, it became obligated to disclose any defects of which it

12   was aware.

13          HP cannot escape the significance of its representation by pointing to the portion of the

14   warranty in which it states that "HP does not warrant that the operation of this HP Product will

15   be uninterrupted or error-free."  This statement is clearly meant to compliment, rather than

16   contradict, HP's guarantee of a defect-free product.  Many factors beyond HP's control go into

17   the operation of the computer, such as the installed operating system and software.  A reasonable

18   consumer would understand the difference.

19          Nor does HP's position find support in any of the other cases upon which it relies.  As HP

20   notes, *Baldain v. Am. Home Mortg. Servicing, Inc*., 2010 U.S. Dist. LEXIS 5671 (E.D. Cal.

21   2010) stands for the proposition that a breach of contract is not a violation of the UCL unless it is

22   independently fraudulent – as HP's concealment of the defect here is alleged to be.

23          In *Beverly Finance Co. v. American Casualty Co*., 273 Cal. App. 2d 259 (Cal. App. 2d

24   Dist. 1969), the court held that an automobile dealer could not be held liable for fraud where he

25   breached a warranty of title due to the automobile having been stolen prior to  sale where the

26   dealer was unaware of the theft.  That differs from the instant situation because Named Plaintiffs

27   allege that HP was aware of the defect at the time it represented to them that the product was free

28   from defect.

1    Similarly, in *Klein v. Earth Elements*, 59 Cal. App. 4th 965 (Cal. App. 1st Dist. 1997),

2   the court, as HP notes, dismissed a UCL claim predicated on a breach of warranty.  In doing so,

3   it specifically noted that "[i]n our view the unintentional distribution of a defective product is

4   beyond the scope and policy of the "unlawful" prong of section 17200."  59 Cal. App. 4th at 969.

5   In contrast, the distribution of the defective product here is alleged to have been done with

6   knowledge of the defect.

7    In fact, a number of courts have held that representations in a warranty that a product is

8   "free from defect" when the warrantor knows this to be false can form the basis of a claim

9   sounding in fraud.  *See, e.g., Country Shindig Opry, Inc. v. Cessna Aircraft Co.*, 780 F.2d 1408

10  (8th Cir. 1986); *Azimi v. Ford Motor Co.*, 977 F. Supp. 847 (N.D. Ill. 1996); *Navistar*

11  *International Corp. v. Hagie Mfg. Co.,* 1987 U.S. Dist. LEXIS 4126 (N.D. Ill. 1987); *Dewey v.*

12  *Volkwagen AG*, 558 F.Supp.2d 505 (D.N.J. 2008); *Norman Gershman's Things to Wear, Inc. v.*

13  *Mercedes-Benz of North America, Inc.,* 1989 Del. Super. LEXIS 110 (Del. Super. Ct. 1989);

14  *Noce  v. Wible,* 1983 Ohio App. LEXIS 12436 (Lake Cty.  1983).

15   **C.   Named Plaintiffs have Pleaded Facts showing that HP's Affirmative**
     **Misrepresentations Violated the UCL and CLRA**

16   Named Plaintiffs have identified at least three affirmative misrepresentations made by HP

17  related to the subject computers.  First, HP promised that the computers would be free from

18  defect.  Second, it promised to repair the computers if a defect existed.  Third, HP told

19  consumers who contacted it for warranty repair that the unstable cursor is the result of user error

20  (that is, brushing the touchpad accidentally), and that the unstable cursor problem could be

21  resolved through software or firmware fixes, or by adjusting properties of various hardware.

22  FAC ¶ 44, 58.  HP asserts that Named Plaintiffs have not properly pleaded that they relied upon

23  these representations, nor have they properly pleaded that these representations were false.  HP's

24  position cannot withstand scrutiny.

25   **1.   Named Plaintiffs Adequately Plead That They Relied on the**
     **Affirmative Misrepresentations Identified in The Complaint.**

26   HP claims that Named Plaintiffs have "failed to allege facts demonstrating that they were

27  ever exposed to HP's alleged misrepresentations."  HP Memo at pg. 13.  HP also asserts that

28

1   Named Plaintiffs have failed to identify which statements they relied upon[4].  When Named

2   Plaintiffs allegations are measured against the applicable law, it is clear that reliance has been

3   pleaded sufficiently.

4        First, it is axiomatic that reliance on a misrepresentation is shown where the

5   misrepresentation results in a change of conduct, i.e., where the plaintiff is induced to do

6   something in response to the misrepresentation.  As the California Supreme Court has explained:

7

8        [R]eliance is proved by showing that the defendant's misrepresentation
         or nondisclosure was 'an immediate cause' of the plaintiff's injury-
         producing conduct.  A plaintiff may establish that the defendant's
9        misrepresentation is an 'immediate cause' of the plaintiff's conduct by
         showing that in its absence the plaintiff 'in all reasonable probability'
10       would not have engaged in the injury-producing conduct."

11  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009).  Moreover, reliance is presumed where

12  the misrepresentation is material, with materiality measured against a reasonable person

13  standard.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (Cal. 1997).

14       A review of the Complaint's allegations demonstrate that with respect to each of the

15  affirmative misrepresentations identified in the Complaint, Named Plaintiffs have alleged both

16  that the subject matter of the misrepresentation was material, and that it affected their conduct.

17       With respect to HP's representation that the computer would be free from defects, Named

18  Plaintiffs allege that "[t]he fact that the notebooks are defective is and was material to Named

19  Plaintiffs and Class Members.  FAC ¶ 35.  In addition, Named Plaintiffs allege that they and

20  Class Members purchased the computers with the expectation that it would be free from defects.

21  FAC ¶ 45, 58.

22       With respect to HP's representation that it would repair defects existing at the time of

23  purchase, Named Plaintiffs have alleged that "[t]he fact that HP is not properly repairing the

24

25  _____

26  [4]For purposes of claims under the fraudulent prong of the UCL, there is no requirement that a
    plaintiff tie his reliance to a specific statement where a widespread advertising campaign is
    alleged.  *In re Tobacco II Cases*, 46 Cal. 4th at 327 ("Nor does a plaintiff need to demonstrate
27  individualized reliance on specific misrepresentations to satisfy the reliance requirement.").  See
    FAC ¶ 19.
28

1    notebooks during the warranty period is and was material to Named Plaintiffs and Class

2    Members.  FAC ¶ 36.  Moreover, Named Plaintiffs allege that they and Class Members

3    purchased the computers with the expectation that if a defect existed, it would be properly

4    repaired by HP.  FAC ¶ 45, 58.

5         With respect to HP's representation that the unstable cursor is the result of user error (that

6    is, brushing the touchpad accidentally), and that the unstable cursor problem could be resolved

7    through software or firmware fixes, or by adjusting properties of various hardware, Named

8    Plaintiffs have alleged that they and Class Members spent significant time following the repair

9    instructions provided by HP.  FAC ¶ 45, 58.

10        Thus, Named Plaintiffs have pleaded that each identified misrepresentation was material,

11   and that they changed their position (both by purchasing the computer and following HP's repair

12   instructions) as a result of the misrepresentation.  These allegations are more than sufficient to

13   properly plead reliance.

14
                    **2.   Named Plaintiff Has Adequately Pleaded The Falsity of HP's**
15                  **        Representations Concerning Its Willingness to Repair The**
                    **        Computers.**
16
          HP's assertion that Named Plaintiffs have failed to plead what is false about its
17
     representations is easily dismissed.  As discussed in detail above, its representation that the
18
     computers were free from defects is properly considered a representation, and is untrue because
19
     the computers contained a serious defect.
20
          With respect to HP's promise to repair the computers, Named Plaintiffs have alleged that
21
     HP knowingly does not properly repair the computers during the warranty period (FAC ¶ 32, 36,
22
     45, 58).  More specifically, Named Plaintiffs allege that HP offers customers who contact it for
23
     warranty repair a variety of explanations for the problem.  "Some consumers are told that the
24
     problem is caused by the computer's touchpad, and are asked to adjust the sensitivity of that
25
     device.  Other consumers are directed to download replacement drivers for the touchpad.  Still
26
     others are told that they must perform a system restore, erasing all of their files in the process,
27
     even though the problem exists out of the box."  FAC ¶ 23.
28

1    Nor does HP actually repair those computers that are sent to it for service.  "HP

2  seemingly randomly replaces the motherboard, digitizer, touchpad, keyboard, LCD screen, fan or

3  hard drive on affected computers, all without resolving the problem.  In the process, it eradicates

4  all of the data on the consumer's hard drive, by performing a system restore on the computer's

5  hard drive."  FAC ¶ 24.  In the case of Plaintiff Baba, HP returned his computer with a new

6  screen and a reduced capacity processor.  FAC ¶ 29.  "The reduction of processor speed is often

7  cited by internet complainants as a way to reduce or eliminate the jumping cursor, because the

8  slower the processor, the less heat produced by the computer, resulting in a slower fan rotation."

9  *Id.*  When the processor was returned to its normal, advertised speed, the problem resumed.

10  FAC ¶ 30.

11    In addition, Named Plaintiffs allege that HP, even while it directed its customers to jump

12  through hoops, knew that it could not resolve the problem with software or firmware fixes or

13  hardware adjustments.  FAC ¶ 32, 44, 57.  In sum, "At all pertinent times, HP has made false and

14  misleading statements of fact regarding the cause of the subject computers' inability to properly

15  function."  FAC ¶ 57.

16  **III.  NAMED PLAINTIFFS HAVE PROPERLY PLEADED CLAIMS FOR BREACH OF EXPRESS AND IMPLIED WARRANTY**

17

18    **A.  Named Plaintiff Baba States A Claim for Breach of Implied Warranty**

19    HP argues that because Arizona requires privity between a manufacturer and a purchaser

20  in order for the purchaser to assert a claim for breach of an implied warranty, Mr. Baba, who

21  purchased his computer from a retailer, is unable to assert this claim.  However, the

22  determination of whether privity of contract exists is dependent upon the nature of the

23  relationship between HP and its retailers.  If the retailer merely acts as an agent of HP in selling

24  the computers, then privity may well exist.  *See*, eg. *Nomo Agroindustrial SA DE CV v. Enza*

25  *Zaden N. Am., Inc.,* 492 F. Supp. 2d 1175 (D. Ariz. 2007)(citing case in which seller was

26  "considered an **agent** of the manufacturer such that there was sufficient privity of contract for the

27  buyer to sue the manufacturer directly.") Named Plaintiffs should have the ability to explore this

28  through discovery.

1      HP also asserts that it cannot have breached the warranty unless the defect rendered the

2   computers unusable.  That is not a proper statement of the law.  In *Islip v. Mercedes-Benz USA,*

3   *LLC,* 155 Cal. App. 4th 19, 27 (Cal. App. 2d Dist. 2007), the court explained the holding in

4   *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291 (Cal. App. 2d Dist.

5   1995), upon which the court in *Tietsworth v. Sears,* 2009 U.S. Dist. LEXIS 98532  (N.D. Cal.

6   2009 ) relied for the proposition that a product must be completely unusable in order to be

7   unmerchantable.  The *Islip* court found that the *American Suzuki* court defined merchantability as

8   it did because the issue before it was whether a class could be certified where virtually none of

9   the class members had experienced the roll over problem about which the Named Plaintiff

10   complained.  The *Islip* court went on to explain:

11

12              Defining the warranty in terms of a vehicle that is "in safe
              condition and substantially free of defects" is consistent with the
13              notion that the vehicle is fit for the ordinary purpose for which a
              vehicle is used. On the other hand, [defendant's] attempt to define
14              a vehicle as unfit only if it does not provide transportation is an
              unjustified dilution of the implied warranty of merchantability. We
15              reject the notion that merely because a vehicle provides
              transportation from point A to point B, it necessarily does not
16              violate the implied warranty of merchantability. A vehicle that
              smells, lurches, clanks, and emits smoke over an extended period
17              of time is not fit for its intended purpose.

18   *Islip,* 155 Cal. App. 4th at 27.  Similarly, a computer whose cursor is randomly jumping around

19   the screen is not fit for its intended purpose.  Plaintiff has alleged that because of the jumping

20   cursor defective design of the computers, they were not of merchantable quality, and has

21   described the nature of the defect in detail.  That is all that is required to properly state claim for

22   breach of the implied warranty of merchantability.

23      **B.  Named Plaintiff Baba States A Claim For Breach Of Express Warranty**

24      HP asserts that Named Plaintiff Baba's breach of express warranty claim should be

25   dismissed because it was his wife, rather than he, who first noticed the problem with the

26   computer.  In a footnote, HP cites to A.R.S. § 47-2313, which it apparently interprets to stand for

27   the proposition that it "can owe no duty, contractual or otherwise, to a non-purchaser of one of

28   its computers."  Memo of HP. at pg. 17.  To the contrary, that statute simply addresses the

circumstances under which an express warranty may be created[5].  Mr. Baba, as the buyer of a

defective product, has standing to assert a claim for breach of warranty.  HP's frivolous

argument should be summarily rejected.

HP next claims that Mr. Baba cannot charge it with breaching the warranty because (1) it

"repaired" the computer by secretly decreasing the speed of the processor and (2) Mr. Baba did

not request additional warranty service after that repair.

With respect to the latter, a review of the Complaint's allegations demonstrate that Mr.

Baba gave HP ample opportunity to make a workmanlike repair to his computer.  When the

problem began, he contacted HP's customer support several times.  At various times, HP

directed Mr. Baba to update the touchpad driver and the computer BIOS.  FAC ¶ 26.  When

these procedures did not work, Mr. Baba was directed by HP to take the computer to the Geek

Squad for repair.  When he did so, Mr. Baba was informed by the Geek Squad that it was aware

of the problem and that the computer could not be repaired.  Compl ¶ 27.  Mr. Baba again

contacted HP and was finally directed to return his computer for warranty service.  FAC ¶ 28.

---

[5] The full text of the statute is as follows:

A.  Express warranties by the seller are created as follows:

1. Any affirmation of fact or promise made by the seller to the buyer which
relates to the goods and becomes part of the basis of the bargain creates an
express warranty that the goods shall conform to the affirmation or promise.

2. Any description of the goods which is made part of the basis of the bargain
creates an express warranty that the goods shall conform to the description.

3. Any sample or model which is made part of the basis of the bargain creates
an express warranty that the whole of the goods shall conform to the sample or
model.

B. It is not necessary to the creation of an express warranty that the seller use formal words
such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but
an affirmation merely of the value of the goods or a statement purporting to be merely the
seller's opinion or commendation of the goods does not create a warranty.

A.R.S. § 47-2313.

1    HP returned the computer to him with an indication that it had replaced the screen.  It neglected

2    to inform him that it decreased the computer's processor speed to approximately 50% of

3    capacity.  FAC ¶ 29.  When Mr. Baba increased the speed to its normal capacity, the problem

4    returned.  FAC ¶ 30.

5          To the extent that HP's argument is that it should have been given additional chances to

6    repair the computer, this argument finds no support in the language of the warranty itself, as it is

7    silent on this issue.  Beyond that, the argument does not belong in a Motion to Dismiss, as it

8    cannot be said that given the allegations of the Complaint, Named Plaintiff will be unable to

9    prove any set of facts entitling him to relief.

10         The same may be said of HP's argument that a reduction of the processor speed

11   constituted a "repair" under the warranty.  Logically, that argument makes no more sense than

12   claiming that a faulty braking system can be repaired by removing two of the car's tires.  And

13   while it seems self-evident that a reduction of the processor speed (which substantially disables

14   the computer) is not the kind of repair contemplated by either the warranty itself or the UCC, the

15   argument raises questions of fact rather than law and does not belong in a Motion to Dismiss.

16   Named Plaintiffs' note, however, that the UCC imposes a duty of good faith on the parties to a

17   contract (*See, e.g.,* A.R.S. §47-1304 ("Every contract or duty within this title imposes an

18   obligation of good faith in its performance and enforcement.")).  Named Plaintiffs submit that a

19   "repair" that practically cripples the computer cannot in good faith be considered compliance

20   with the express warranty.

21         **C. Named Plaintiff Ritz Has Adequately Stated A Claim For Breach of Express and
             Implied Warranty.**

22

23         HP urges dismissal of Named Plaintiff Ritz's warranty claims because, even though he

     experienced the problem during the warranty period, he did not personally notify HP of the

24   defect until after the warranty expired.

25         With respect to both the express and implied warranty claims, per Massachusetts law,

26   lack of notice is not a defense to a breach of warranty action unless the defendant can show that

27   it was prejudiced by the lack of notice.  *See, e.g.,* ALM GL ch. 106, § 2-318 ("Failure to give

28

1   notice shall not bar recovery under this section unless the defendant proves that he was

2   prejudiced thereby.").  As one Massachusetts court explained:

3

4   > A failure to give timely notice of breach of warranty, if prejudicial
    > to the defendant, constitutes a defense." … However, a lack of
    > prompt notice will only act as a defense if the defendant proves

5   > that he was prejudiced by the delay. The burden of proof is on the
    > defendant to prove 1) that the delay was unreasonable and 2) that it

6   > was prejudiced by the delay. **In Massachusetts, both issues are
    > normally jury issues.** *Sacramona v. Bridgestone/Firestone, Inc.,*

7   > 106 F.3d 444, 449 (1st Cir. 1997).

8   *New London County Ins. Co. v. Broan-NuTone, LLC,* 21 Mass. L. Rep. 272 (Mass. Super. Ct.

9   2006)(emphasis supplied).

10          Moreover, HP's written warranty contains no requirement that notice be given during the

11   one year warranty period.  FAC Ex. 3.  Instead, the warranty provides that the purchaser shall be

12   "entitled to warranty service according to the terms and conditions of this document if a repair to

13   your HP Product is required within the Limited Warranty Period."  Certainly, a repair is required

14   at the point that a defect becomes manifest, whether or not HP is notified of the need for repair.

15   At the very least, this issue raises a question of fact.

16          That these issues are jury issues is reason enough to reject HP's notice argument.  There

17   is, however, an additional reason.  Named Plaintiffs allege that HP knew of the defect at the time

18   it sold the computer to Mr. Ritz (FAC ¶ 38) and that it received a large number of complaints

19   about the jumping cursor problem (FAC ¶ 33) and so had long been on notice that a significant

20   problems exists with these computers.

21   **IV.   NAMED PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR
            UNJUST ENRICHMENT**

22          HP's objections to Named Plaintiffs' claim for unjust enrichment are easily dealt with.

23   First, its arguments with respect to the laws of Massachusetts and Arizona are without merit, as

24   California law will apply to this claim.  Judge Wilken of this District recently conducted a choice

25

26

27

28

of law analysis[6] on an unjust enrichment claim asserted on behalf of a nationwide class, and concluded:

> Here, the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case. Common to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their fireplaces. See *Schumacher*, 221 F.R.D. at 612 ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment."). The "idiosyncratic differences" between state unjust enrichment laws "are not sufficiently substantive to predominate over the shared claims." See Hanlon, 150 F.3d at 1022. Overall, Defendants have not shown that the differences among the various state laws are material. Therefore, the Court need not move beyond the first step in the choice of law analysis.

*Keilholtz v. Lennox Hearth Prods.*, 2010 U.S. Dist. LEXIS 14553 (N.D. Cal. 2010).

California recognizes claims for unjust enrichment. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006); *See also Malcolm v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 23770 (N.D. Cal. 2010)("In order to establish a cause of action for unjust enrichment, a plaintiff must plead "receipt of a benefit and the unjust retention of the benefit at the expense of another.") *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000).

---

[6] In reaching this conclusion, the court applied the "governmental interest" approach to choice of law issues mandated by the California Supreme Court:

> [T]he governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 107-08 (2006).

Moreover, while it is true that a party may not recover for both breach of a contract such as a warranty and for unjust enrichment, "that a valid contract may exist between the parties is no bar to pleading, in the alternative, a claim of unjust enrichment." *Mauro v. GMC*, 2008 U.S. Dist. LEXIS 93897 (E.D. Cal. 2008).

Nor can HP claim that, as a manufacturer, it received no benefit from Mr. Baba's purchase of its computer from a retailer. At a minimum, whether or not it receives a benefit is dependent upon the type of relationship it has with its retailers. For example, if its retailers act as agents or consignees, then the purchase of a computer by an end purchaser directly benefits HP. In any event, Named Plaintiffs should be given the opportunity to obtain information concerning the nature of the relationship. It cannot be said at this stage of the litigation that Named Plaintiff Baba can prove no set of facts entitling him to relief.

### V. HP FAILS TO ASSERT AN APPROPRIATE BASIS FOR STRIKING NAMED PLAINTIFFS' CLASS ALLEGATIONS.

With its Motion to Strike Plaintiffs' class allegation for the warranty and unjust enrichment claims, HP puts the proverbial cart before the horse. As HP cited in its Motion, FRCP 12(f) provides that the Court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, Rule 12(f) motions are disfavored because of the limited importance of pleading in federal practice. *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d, 609, 614 (N.D. Cal. 2007). Moreover, "a motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Hibbs-Rines v. Seagate Tech., LLC.*, 2009 U.S. Dist. LEXIS 19283, at *5 (N.D. Cal. 2009)(internal quotes omitted). Noticeably absent from HP's Motion is any discussion of how the class allegations represent "any redundant, immaterial, impertinent, or scandalous matter." *Id.* Furthermore, it is particularly important to note that Defendant is not moving to strike the class allegations with respect to the UCL and CLRA claims. Thus, the class allegations with respect to these claims will still necessitate class-wide discovery.

1    In any event, motions to strike class allegations have been routinely denied before class

2    certification.  *See Thorpe v. Abbott Labs, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal.

3    2008)("Motions to strike class allegations are disfavored because a motion for class certification

4    is more appropriate vehicle for the arguments Abbott advances herein."); *Shein v. Canon U.S.A.,*

5    *Inc.*, 2009 U.S. Dist. LEXIS 94109, at *34 (C.D. Cal. 2009) ("The Court finds that [the matters

6    relating to a nationwide class action] are more properly decided on a motion for class

7    certification."); *Kazemi v. Payless Shoesource, Inc.*, 2010 U.S. Dist. LEXIS 27666, at *11-12

8    (N.D. Cal. 2010)("Plaintiff has sufficiently pled the necessary elements of a class action,

9    proposed what could be an adequate class definition and sufficiently pled that the action meets

10   the requirements to maintain a class action.  Defendants' arguments to the contrary are better

11   suited to an opposition to a motion for class certification.").

12   Additionally, Plaintiffs are entitled to conduct discovery relevant to class certification

13   prior to the Court striking the class allegations.  *Hibbs-Rines*, 2009 U.S. Dist. LEXIS 19283, at

14   *7-8 ("the Court finds that the motion to strike the class allegations is premature.  Plaintiff

15   should at least be permitted to conduct some discovery before the Court rules on the propriety of

16   the class allegations."); *Velasquex v. HSBC Finance Corp.*, 2009 U.S. Dist. LEXIS 5428 (N.D.

17   Cal. 2009)(denying motion to strike class allegations prior to discovery).  Thus, any attempt to

18   foreclose Plaintiffs' ability to conduct class related discovery is entirely premature and the Court

19   should summarily deny Defendant's Motion to Strike.

20

21

22

23

24

25

26

27

28

1

<u>**CONCLUSION**</u>

2

For all of the reasons stated herein, Named Plaintiffs respectfully request that HP's

3

Motion to Dismiss or Strike be overruled.  To the extent that the Court believes that the

4

allegations of the FAC are deficient in any respect, Named Plaintiffs respectfully request the

5

opportunity to amend the FAC.

6

Dated April 22, 2010                                    Respectfully submitted,

7

8

9

  /s/ Barbara Quinn Smith_____
Barbara Quinn Smith (Ohio Bar 0055328)

10

Thomas K. Caldwell (Indiana Bar 16001-49)
(*Pro Hac Vice*)

11

T. John Kirk (Indiana Bar 27202-29)
(*Pro Hac Vice*)

12

**MADDOX HARGETT & CARUSO, P.C.**

13

10100 Lantern Road
Suite 150

14

Fishers, IN 46037
Telephone: 317-598-2040

15

Facsimile: 317-598-2050

16

Scott R. Kaufman, SBN 190129

17

1400 Coleman Ave., Suite F-26
Santa Clara, CA  95050

18

Telephone: (408) 727-8882

19

Facsimile: (408) 727-8883
lemonatty@gmail.com

20

21

22

23

24

25

26

27

28

- 24 -

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3

4          I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
5    and paper copies will be sent to those indicated as non registered participants on April 22, 2010.

6
Dated:  April 22, 2010                              Respectfully submitted,
7

8

9                                                                   /s/ Barbara Quinn Smith
                                                                   Barbara Quinn Smith
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Named Plaintiffs' Response to HP's Motion to Dismiss or Strike – Case No. 5:09-CV-05946 RS