*E-Filed 06/16/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DAVID BABA and RAY RITZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HEWLETT-PACKARD COMPANY, a Corporation,

Defendant.
_____/

No. C 09-05946 RS

**ORDER REGARDING DEFENDANT'S MOTIONS TO DISMISS AND TO STRIKE**

## I.   INTRODUCTION

This putative class action arises out of two allegedly defective lines of computers sold by defendant Hewlett-Packard Company ("HP"). The first amended complaint ("FAC") filed by plaintiffs David Baba ("Baba") and Ray Ritz ("Ritz") alleges: (1) violations of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (2) violations of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); (3) breach of express warranty; (4) breach of implied warranty of merchantability; and (5) unjust enrichment. HP moves to dismiss all five claims for relief. In the alternative, it moves to strike the nationwide class allegations attached to plaintiffs' warranty and unjust enrichment claims. For the reasons stated below, the Court orders as follows: HP's motion to dismiss is granted with leave to amend with respect to the UCL, CLRA and unjust enrichment claims as to both plaintiffs; HP's motion to dismiss is granted with leave to amend with respect to the warranty claims as to Baba, but denied with respect to the warranty claims as to Ritz; HP's motion to strike the class allegations is denied.

No. C 09-05946 RS
ORDER

## II. BACKGROUND

According to the FAC, Baba purchased an HP TX series notebook computer in November 2008 from a Sam's Club in Tucson, Arizona, and Ritz, a Massachusetts resident, purchased a similar TX series computer in March 2008 directly from HP.[1]  Both plaintiffs allege that their computers contained a cooling fan located in the right side of the notebook, just above the keyboard panel, and that the blades of the fan continually draw the cursor to the lower right hand portion of the screen, significantly interfering with the computer's operation.  Baba alleges that he contacted HP customer service in an attempt to fix his computer while it was still under its one-year warranty, and even sent it in to HP for repairs, but to no avail.  Ritz concedes he did not contact HP during the one-year warranty period, but nonetheless avers the problems with his computer manifested themselves within the warranty period and that he was similarly unsuccessful in his attempts to get help from HP customer service a few months after the warranty expired.

HP, plaintiffs allege, was aware of the defect caused by the fan at the time it sold the computers to plaintiffs because HP had received numerous complaints directly from its customers.  Also, they allege HP was alerted to the defects by complaints posted on the internet, including consumer forums on HP's own website.  The FAC avers, moreover, that there are "thousands of Class members who purchased the subject notebook computers."  FAC ¶ 4. Based on these allegations, the FAC states the five claims for relief.  HP moves to dismiss all five claims based on Federal Rule of Civil Procedure 12(b)(6).  Alternatively, it moves to strike the nationwide class averments as to last three claims based on Federal Rule of Civil Procedure 12(f).  The parties presented oral argument on the motions in this Court on May 27, 2010.

//
//
//
//

---

[1] The HP computers at issue in this lawsuit are notebook computers in the TX 2000 and TX 2500 series.

Order

2

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 US at 570). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Claims grounded in an allegation of fraud are subject to Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106.

1  Rule 9(b)'s heightened pleading requirements apply to claims for violations of CLRA and UCL
2  where the claims are based on fraudulent conduct, such as the misstatements and fraudulent
3  concealment alleged in the FAC.  *Id*. at 1103-1104; *see also, In re Tobacco II Cases*, 46 Cal. 4th
4  298, 312 (2009).  Rule 9(b) also applies equally to federal claims as it does to state-law causes of
5  action before a federal court.  *See Vess*, 317 F.3d at 1106 (quoting *Hayduk v. Lanna,* 775 F.2d 441,
6  443 (1st Cir. 1985)).

7  A plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or
8  scienter. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994).  The requirement for
9  pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances
10 that constitute fraud" because Rule 9(b) states that "malice, intent, knowledge, and other condition
11 of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).  Nonetheless, plaintiffs must still
12 satisfy the requirements of Rule 8; therefore, conclusory averments of scienter, without reference to
13 a factual context, are insufficient and not entitled to be presumed true.  *Iqbal*, 129 S. Ct. at 1951
14 (citing *Twombly*, 550 US at 554-555).

15 Pursuant to Federal Rule of Civil Procedure 12(f), a party may move to strike from a
16 pleading "any insufficient defense or any redundant, immaterial, or impertinent and scandalous
17 matter."  Fed. R. Civ. P. 12(f).  "Where the complaint demonstrates that a class action cannot be
18 maintained on the facts alleged, a defendant may move to strike class allegations prior to
19 discovery." *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 990 (N.D. Cal. 2009).  Before a motion to
20 strike is granted, the court must be convinced that any questions of law are clear and not in dispute,
21 and that under no set of circumstances could the claim or defense succeed.  *Id.*; *see also RDF Media*
22 *Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal.2005).

23 //
24 //
25 //
26 //
27 //
28

IV.     DISCUSSION

A.     CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  Sellers can be liable under CLRA for making affirmative misrepresentations as well as for failing to disclose defects in a product. *See, e.g., Hovespian v. Apple, Inc.*, 2009 WL 2591445 at *3 (N.D. Cal. Aug. 21, 2009); *Daugherty v. American Honda Co., Inc.*, 144 Cal. App. 4th 824 (2006).  Plaintiffs allege that HP made misleading statements regarding the ability of the subject computers to function properly, that it made misleading statements regarding the cause of the defects in these computers and that it had pre-sale knowledge of these defects which it failed to disclose, all in violation of subsections (a)(5), (7), (9), and (14) of California Civil Code section 1770.

As a threshold matter, the parties dispute the standard for a duty to disclose under CLRA.  In *Daugherty*, the court held that, to state a claim under CLRA for fraudulent omissions, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." 144 Cal. App. 4th at 835.  The court then found that the plaintiff had not sufficiently stated a claim because the complaint was "devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect." *Id*. at 837.  In *Hovespian*, the Court held that a duty to disclose exists if: "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." 2009 WL 2591445 at *3 (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007) and *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).

HP relies on *Daugherty* and *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (9th Cir. 2008) for the proposition that a defendant is "obliged to disclose" only when there are safety concerns posed by a defect.  *Oestreicher* and *Daugherty*, however, are factually distinguishable

1  from this case in that they both involved alleged defects that had manifested themselves after
2  expiration of the warranty period. Indeed, the Court in *Oestreicher* focused on this fact in
3  expressing its concern that a contrary holding would overly expand the landscape of warranty and
4  product liability law. 544 F. Supp. 2d. at 972 ("the circumstances of this case are factually closer to
5  the *Daugherty* line of cases [which all alleged defects outside the warranty period]."). *Hovsepian*,
6  on the other hand, did not limit its holding to cases involving defects after the warranty period.
7  2009 WL 2591445 at *3.[2] And although *Falk* and *LiMandri*, the cases upon which the *Hovsepian*
8  Court relied, are factually distinguishable from this case, the alleged conduct of the defendant in
9  *Hovsepian* was similar to HP's alleged conduct here.[3] Therefore, the Court applies the standard for
10 a duty to disclose as laid out in *Hovsepian*, *Falk* and *LiMandri*.

11    Notwithstanding the application of this broader duty to disclose, however, the FAC fails to
12 allege with sufficient particularity that HP either made affirmative misrepresentations or that it
13 failed to disclose material information. Plaintiffs maintain that HP made affirmative
14 misrepresentations when it marketed the computers as "tablets" (FAC ¶¶ 19, 44), when it warranted
15 that the computers would be "free from defects" (FAC ¶ 38), when it promised to repair the
16 computers if a defect existed (FAC ¶ 44) and when it explained the cause of the alleged defects
17 (FAC ¶ 44). None of these allegations, however, "provide the who, what, where, when, and how"
18 of any affirmative misrepresentations as required under Rule 9(b). *See In re Tobacco II Cases*, 46
19 Cal. 4th at 312. There are no averments as to where or when the marketing statements were made,
20 or establishing that those statements, or HP's warranties, promises or explanations of the alleged

---

[2] Although the defects alleged in *Hovsepian* also appeared after the warranty period, the Court applied the broader duty to disclose and held that "generalized allegations with respect to consumer expectations are insufficient to meet Rule 9(b)'s heightened pleading requirements, *especially when the alleged defect manifested itself more than one year after the expiration of the express warranty*." 2009 WL 2591445 at *3 (emphasis added). The Court also cited *Oestreicher* for the proposition that "policy reasons militate against following *Falk* [which found a duty to disclose] in this situation - where a duty to disclose is being imposed on a manufacturer for a latent non-safety related defect in its product [after expiration of the express warranty]." *Id*. Fn. 4. In other words, the Court recognized the holding in *Oestreicher*, yet still adopted the broader duty to disclose. It did this by not limiting the holding to cases where an alleged defect manifests itself after the expiration of the warranty.

[3] The Court notes the FAC avers that, although Ritz contacted HP after the warranty period, the alleged defect occurred during the warranty period. Therefore, the Court applies the same duty to disclose standard to both Baba and Ritz.

defects, were in fact untrue. Indeed, marketing campaigns referring to the computers as "tablets," warranties that the tablets are "free from defects," or "promises to repair" do not become untrue statements under CLRA simply because the computers had defects. The word "tablet" merely describes the product being sold and does not constitute a representation of the quality of the product, nor does it become a misrepresentation if the product malfunctions. *See Long v. Hewlett-Packard Co.*, 2007 WL 2994812 at *7 (N.D. Cal. Jul. 27, 2007) (finding that "[t]he word "notebook" describes the type of product being sold" and "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' on which a reasonable consumer could not rely"). Similarly, the failure to fulfill promises under a limited warranty is simply a contractual breach that does not become actionable under CLRA without proof of more, such as the fact that the defendant sold a product it was aware was defective. *See, e.g., Id.* at *4; *KEMA, Inc. v. Koperwhat*s, 658 F. Supp. 2d 1022, 1033 (N.D. Cal., 2009) (breach of contract does not form the basis for a UCL claim unless the breach is unlawful, unfair or fraudulent); *Beverly Finance Co. v. American Casualty Co.*, 273 Cal. App. 2d 259, 265 (1969) (breach of warranty of title, without more, does not constitute fraud). Here, as discussed in the paragraph below, the FAC make no averments that HP knew of the alleged defects at the time it sold the computers or at the time it explained the causes of those defects to plaintiffs. Therefore, as to any affirmative misrepresentations, plaintiffs allege little more than a breach of contract.

  As to HP's duty to disclose the alleged defects, plaintiffs acknowledge that there is no fiduciary relationship between the parties, but they assert that the other three prongs of the standard articulated in *Hovsepian* have been met; that defendant had exclusive knowledge of material facts not known to the plaintiffs, that defendant actively concealed material facts from plaintiffs when they contacted HP for repairs and that defendant made partial representations but also suppressed material facts about the defects. The FAC, however, fails to allege any of these three prongs because it makes no averment that HP actually knew of the alleged defects at the time of the sales or repairs. Instead, the FAC avers that "HP is aware of the defect due to the numerous complaints it has received, as well as those posted on the internet including in consumer forums on hp.com."

1  FAC ¶ 33.  The FAC cites seven of those postings.  FAC ¶ 22.  None of those postings or
2  complaints, however, include any dates, and therefore shed no light on when HP knew of the alleged
3  defects.

4        Plaintiffs cite *Falk* for the proposition that customer complaints can impute knowledge on a
5  defendant, but *Falk* is of no assistance here because it is factually quite different from this case.  In
6  *Falk*, the complaint alleged that General Motors had failed to notify plaintiffs, who had purchased
7  trucks between 2003 and 2007, that their trucks had faulty speedometers.   496 F. Supp. 2d at 1096.
8  The complaint included averments that numerous customers had complained about the
9  speedometers between 2003 and 2007, that dealers had provided General Motors with pre-release
10 testing data on the speedometers and that the car company had exclusive access to this information
11 because customers would only become aware of the defect if they actually experienced it first-hand.
12 *Id*.  These averments, the Court held, were sufficient to allege that General Motors had exclusive
13 knowledge of the putative defect.  *Id*.  Here, however, the FAC simply provides a series of anecdotal
14 complaints, without any dates or any other information.  These generalized allegations are
15 insufficient to meet Rule 9(b)'s pleading requirements and cannot impute a duty to disclose on HP.
16 *See Hovsepian*, 2009 WL 2591445 at *3.

17       Finally, and perhaps most damaging to the CLRA claim, plaintiffs have not sufficiently
18 alleged that they relied on any of HP's statements or omissions in purchasing the computers.  Unlike
19 claims under UCL, CLRA claims have "a more stringent standing requirement, in that a class
20 representative must show actual causation and reliance."  *In re ActImmune Marketing Litig.*, 2009
21 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009); *see also Wilens v. TD Waterhouse Group, Inc.*, 120
22 Cal. App. 4th 746, 755 (2003) ("[CLRA] does not create an automatic award of statutory damages
23 upon proof of an unlawful act.  Relief under the CLRA is specifically limited to those who suffer
24 damage, making causation a necessary element of proof.").  Here, while the FAC avers generally
25 that plaintiffs "reasonably expected that HP would honor its warranty," (FAC ¶ 34) it fails to allege
26 with any particularity how Baba and Ritz relied upon any specific misleading statements at the time
27 of the transactions.  Moreover, the FAC seems to focus on HP's alleged post-transaction behavior,
28

emphasizing HP's statements to plaintiffs that the cursor problems were the result of user error and/or software and hardware problems. This behavior is irrelevant to the question of whether HP made false statements to plaintiffs before or during their respective transactions which induced them to purchase the computers. In light of these considerations, HP's motion to dismiss will be granted with leave to amend as to plaintiffs' CLRA claim.

B.  UCL

California's UCL prohibits acts or practices that are: (1) unlawful; (2) fraudulent; or (3) unfair. Cal. Bus. & Prof. Code § 17200. Each prong of the UCL constitutes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiffs argue all three theories here.

1.  Unlawfulness

As to the "unlawful" prong, UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). In other words, as the California Supreme Court has put it, "an action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." *Farmers Ins. Exchange v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992) (quotations and citations omitted). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).

In its invocation of the unlawfulness prong of UCL, the FAC alleges that HP's conduct violated the following sections of the California Civil Code: § 1770 (CLRA); § 1572 (actual fraud); § 1573 (constructive fraud); § 1709 (fraudulent deceit); § 1710 (deceit); and § 1711 (deceit upon the public). All of these statutes, plaintiffs contend, were violated when HP (1) "continu[ed] to voluntarily and expressly warrant the subject computers without the intent to uphold its warranty," (2) "continu[ed] to sell the subject computers after learning that the subject computers experienced

significant problems with jumping cursors" and (3) "omitt[ed] facts it had a duty to disclose." FAC ¶ 41.

These three factual allegations, however, are tied with insufficient particularity to the six statutes the FAC mentions. In California, a UCL claim of any kind "must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006) (applying *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993)). Here, each of the six alleged statutory violations listed above has its own line of case law and its own set of elements. If plaintiffs wish to base a UCL "unlawfulness" claim on any one statute, *Brothers* and *Khoury* compel them to plead with particularity how the facts of this case pertain to that specific statute. *See Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) (cautioning against "throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court"). Therefore, with respect to the "unlawfulness" prong of UCL, HP's motion to dismiss is granted with leave to amend.

2.   Fraud

Unlike in common law fraud, a plaintiff alleging violations of the "fraud" prong of UCL need not show that the fraudulent deception was "actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Instead, a plaintiff need "only to show that 'members of the public are likely to be 'deceived.''" *Id*. (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). Where a plaintiff alleges that the defendant failed to disclose material facts, he must first establish that the defendant had a duty to disclose those facts. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."). The reason for this is that "a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008). A duty to disclose under UCL requires the same

showing as a duty to disclose under CLRA.  *See Falk*, 496 F. Supp. 2d at 1096; *see also, Hovespian*, 2009 WL 2591445 at *4.

As noted above, UCL claims under a "fraud" theory are subject to the higher pleading demands of Rule 9(b), requiring averments as to the "who, what, where, when, and how" of the charged misconduct.  *In re Tobacco II Cases*, 46 Cal. 4th at 312.  For the same reasons that the FAC fails to state a claim for relief under CLRA, the UCL claim grounded on fraud has similarly not been adequately pled.  Plaintiffs have not sufficiently alleged that HP made any affirmative misrepresentations, nor are there any averments that HP knew of the alleged defects at the time Baba and Ritz purchased their computers or contacted customer support.   Therefore, as to the "fraudulent" prong of UCL, HP's motion to dismiss is granted with leave to amend.

3. Unfairness

As to UCL's "unfair" prong, California courts traditionally have applied a balancing test.  Under this test, "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also People v. Casa Blanca Convalescent Homes Inc.*, 159 Cal. App. 3d 509, 530 (1984) (stating that a practice in California is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.").  In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, however, the California Supreme Court rejected that test and instead held that in a claim brought by a competitor, "any finding of unfairness . . . [must] be tethered to some legislatively declared policy."  20 Cal. 4th 163, 185 (1999).  Yet, because *Cel-Tech* expressly limited its holding to competitor lawsuits, the appropriate test to determine whether a practice is "unfair" in a consumer case under California law remains uncertain.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) ("California's unfair competition law, as it applies to consumer suits, is currently in flux"); *compare, e.g.*, *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 720 n.23 (2001) ("we are not to read *Cel-Tech* as suggesting that such a restrictive definition of

'unfair' should be applied in the case of an alleged consumer injury"), *with, e.g.*, *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (requiring, under *Cel-Tech*, that a UCL claim be tethered to a legislatively declared policy). The Ninth Circuit has observed that these two options—to apply *Cel-Tech* directly to consumer cases and require that the unfairness be tied to a "legislatively declared" policy as in *Scripps Clinic*, or to adhere to the former balancing test as stated in cases such as *Motors, Inc.*—are not mutually exclusive. *Lozano*, 504 F.3d at 736.

Here, the FAC as it currently stands fails to allege facts sufficient to support either theory of liability under the UCL's "unfair" prong. It devotes only a single paragraph to these complex concepts, cursorily listing the same string of statutes as were associated with the "unlawful" prong and alleging vaguely that "HP's conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated. . . . The gravity of HP's alleged wrongful conduct outweighs any purported benefits attributable to such conduct." FAC ¶ 42. The inadequacy of the FAC's pleading in this regard necessitates dismissal, with leave to amend, of plaintiffs' UCL "unfairness" claim.

C.  Express Warranty

HP contends that Baba's breach of express warranty claim fails because (1) it was his wife, and not he, who noticed the defect and (2) after HP repaired the computer under the terms of the warranty Baba did not request additional service. HP also contends that Ritz's claim for breach of express warranty fails because he did not seek a repair from HP within the time required by the limited warranty.

An express warranty is a contact concerning some aspect of the sale, such as the quality of the warranted item and the process by which any defects will be repaired. *Long v. Hewlett-Packard Co.*, 2007 WL 4877691 at *4 (N.D. Cal. Dec. 21, 2006) (citations omitted). In Massachusetts a buyer must notify the seller of a breach of warranty, express or implied, within a reasonable time. *See* M.G.L.A. c. 106, § 2-607. Plaintiff's failure to notify the seller, however, will not bar recovery for a breach of warranty unless the defendant proves that he was prejudiced. *See* M.G.L.A. c. 106, § 2-318. Whether notice is prompt or a defendant has been prejudiced depends on the circumstances

and is to be determined by the fact finder. *See, e.g.*, *P & F Const. Corp. v. Friend Lumber Corp. of Medford*, 31 Mass. App. Ct. 57 (1991); *Henrick v. Coats Co., Inc.*, 17 Mass. App. Ct. 976 (1984). Under Arizona law, the purchaser of an item has standing to sue for breach of warranty. *See* A.R.S. § 47-2313. In order to state a claim for breach of warranty in Arizona, however, the buyer must provide notice of the breach to the seller. *See* A.R.S. § 47-2607.

As to Baba, then, while his wife may have "noticed that the cursor would jump," the FAC avers that Baba was the purchaser, and that he called HP about the problem himself. FAC ¶ 26. Therefore, Baba has standing to assert a claim for breach of express warranty against HP. The express warranty in question is a "replace or repair" warranty, which HP says it honored by repairing the computer. Doc. No. 21 at 18. The portion of the FAC that HP cites, however, does not aver that HP returned a "working computer" to Baba. Rather, it alleges that HP simply reduced the processor speed, which is "cited by internet complaints as a way to reduce or eliminate the jumping cursor." FAC ¶ 29. When Baba discovered this, he alleges that he returned the processor speed to normal and the problem persisted. FAC ¶ 30. He does not allege, however, that he contacted HP again after the problem returned. Therefore, despite the fact that whether HP actually "repaired" the computer is a factual determination, because the FAC contains no averment of notice, Baba's claim for breach of express warranty is dismissed with leave to amend.

As to Ritz, however, while it is undisputed that he waited until after the expiration of the warranty to notify HP of the jumping cursor, he alleges that the problems arose within the warranty period. FAC ¶ 31. In Massachusetts, however, the failure of a buyer to notify the seller of a breach of warranty only permits a bar for recovery when there has been prejudice to the defendant. *See* M.G.L.A. c. 106, § 2-318. Because prejudice to the defendant is a factual determination, *see Henrick*, 17 Mass. App. Ct. at 976, and accepting all material allegations in the complaint as true while construing them in the light most favorable to plaintiffs, the FAC states a claim for breach of express warranty as to Ritz that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1949. Therefore, HP's motion to dismiss the claim for breach of express warranty as to Ritz is denied.

D. Implied Warranty of Merchantability

HP moves to dismiss plaintiffs claim for breach of implied warranty of merchantability on the grounds that (1) Baba was not in privity of contract with HP when he bought the computer, (2) Baba has not shown that HP's repairs left the computer unfit for ordinary use and (3) Ritz did not seek a repair from HP within the time required by the limited warranty.

In Arizona, privity of contract is required for claims alleging breach of the implied warranty of merchantability. *See Flory v. Silvercrest Indust.*, 159 Ariz. 574, 578 (1981). In their opposition, plaintiffs assert that the determination of whether privity of contract exists in Arizona is dependent upon the nature of the relationship between the parties; where the retailer acts as an agent of HP, privity between HP and Baba would exist. *See Nomo Agroindustrial SA DE CV v. Enza Zaden N. Am., Inc.*, 492 F. Supp. 2d 1175 (D. Ariz. 2007). Whether or not this is an accurate statement of Arizona law, the FAC makes no averments as to the nature of the relationship between HP and its retailers. Therefore, the motion to dismiss the claim for breach of implied warranty is granted with leave to amend as to Baba. For the same reasons stated in the discussion of the breach of express warranty, HP's motion to dismiss Ritz's claim for breach of implied warranty is denied.

E. Unjust Enrichment

Plaintiffs claim for unjust enrichment is premised on the same factual allegations underlying the warranty, CLRA and UCL claims. Because unjust enrichment is a remedy that cannot stand alone apart from a substantive allegation of misconduct in this particular context, *see Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911(2008), the claim will be dismissed with leave to amend.

F. Class Allegations

Rule 12(f) provides that the Court may strike from any pleading "redundant, immaterial, impertinent, or scandalous matter." While courts have granted motions to strike class allegations if it is clear that no class action can be certified, *see Sanders* 672 F.Supp.2d at 990, HP argues that the class allegations here should be struck because it would require application of each putative class member's home state law to resolve his/her claims, rendering the case unmanageable. While this may be an appropriate argument against class certification, nothing in Rule 12(f) mentions

1  "manageability."  Indeed, *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir.
2  2001), upon which HP relies for the proposition that unmanageable class actions are improper,
3  addressed a motion for class certification under Rule 23 rather than a motion to dismiss under Rule
4  12(f).  Therefore, the motion to strike the claim for class certification is denied.

V.  CONCLUSION

HP's motion to dismiss is granted with leave to amend with respect to the UCL, CLRA and unjust enrichment claims as to both plaintiffs.  The motion is granted with leave to amend with respect to the warranty claims as to Baba, but denied with respect to the warranty claims as to Ritz.  The motion to strike the class allegations is denied.  Should plaintiffs wish to amend the FAC to address the insufficiencies described herein, they should do so within 30 days of the date of this order.

IT IS SO ORDERED.

Dated: 06/16/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE