1   Barbara Quinn Smith (Ohio Bar 0055328)
    (*Pro Hac Vice*)
2   **MADDOX HARGETT & CARUSO**
    9853 Johnnycake Ridge Road
3   Suite 302
    Mentor, OH 44060
4   Telephone: 440-354-4010
    Facsimile: 440-848-8175
5   bqsmith@mhclaw.com
    (Additional Counsel listed below)
6

7   Attorneys for David Baba and Ray Ritz, Named Plaintiffs and all others similarly situated

8                   **IN THE UNITED STATES DISTRICT COURT**
                        **NORTHERN DISTRICT OF CALIFORNIA**
9                              **SAN JOSE DIVISION**

10

11  DAVID BABA,                          |   CASE NO:  C 09 5946-RS
                                         |
12          and                          |
                                         |
13  RAY RITZ,                            |
                                         |
14                                       |   **NAMED PLAINTIFFS' MEMORANDUM**
    Individually and on behalf           |   **IN OPPOSITION TO HEWLETT**
15  of all others similarly situated,    |   **PACKARD COMPANY'S MOTION TO**
                                         |   **DISMISS PLAINTIFFS' SECOND**
16                                       |   **AMENDED COMPLAINT**
              PLAINTIFFS,                |
17                                       |
                                         |   Date: December 2, 2010
18          -vs-                         |   Time: 1:30 PM
                                         |   Court: United States Courthouse (San Francisco)
19  HEWLETT PACKARD COMPANY,             |   Place: Courtroom 3, 17th Floor
    A Corporation,                       |   Before: The Honorable Richard G. Seeborg
20                                       |
                                         |
21            DEFENDANT.                 |
                                         |
22                                       |
                                         |
23                                       |

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW ................................................................................................ 1

ARGUMENT OF LAW..................................................................................................... 3

I.     NAMED PLAINTIFFS HAVE ADEQUATELY PLEADED THAT THEY RELIED ON
       HP'S MISREPRESENTATIONS......................................................................................... 3

   A. Named Plaintiffs have Adequately Pleaded That They Relied on HP's Description of the
      Notebooks As Containing Tablet Or Touchscreen Features................................................ 3

   B. Named Plaintiffs Have Adequately Pleaded That They Relied Upon The Representations
      Made By HP In Its Warranty. ............................................................................................. 5

II.    HP'S AFFIRMATIVE MISREPRESENTATIONS  ARE OF THE SORT THE CLRA
       WAS DESIGNED TO REMEDY ...................................................................................... 6

   A. Named Plaintiffs Have Pleaded the Circumstances Under Which HP Misreprepresented
      The Condition of the Notebooks With Particularity ........................................................ 7

   B. Plaintiffs specifically allege the representations were untrue ............................................. 7

III.   NAMED PLAINTIFFS HAVE ADEQUATELY PLEADED THAT HP WAS UNDER A
       DUTY TO DISCLOSE THE DEFECT TO PURCHASERS ............................................. 9

   A. Plaintiffs have adequately pleaded that HP had knowledge of the defect at the time Mr.
      Baba purchased the computer. ........................................................................................... 9

   B. Named Plaintiffs Have Adequately Pleaded That HP Had a Duty To Disclose The Defect
      ......................................................................................................................................... 13

      1.     HP Had Superior Knowledge of The Defect ........................................................... 13

      2.     HP Actively Concealed the Defect.......................................................................... 15

      3.     HP Made Partial Representations Concerning The Characteristics of the Computer  16

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.     NAMED PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM UNDER THE UCL.................................................................................................................. 17

    A. Named Plaintiffs Have Identified Conduct Which Violates California Law. ................... 17

       1.    Cal. Civ. Code § 1572 ......................................................................... 17

       2.    Cal. Civ. Code § 1573 ......................................................................... 18

       3.    Cal. Civ. Code § 1709 ......................................................................... 19

       4.    Cal. Civ. Code § 1770 ......................................................................... 20

    B. Named Plaintiffs Have Identified Fraudulent Conduct .................................................... 20

    C. Named Plaintiffs Have Identified Unfair Conduct .......................................................... 20

V.     NAMED PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES .................................................................... 21

    A. As a Matter of Law, Named Plaintiff Ritz Was Not Required to Provide Notice to HP While The Express Warranty Was In Effect..................................................................... 21

    B. Named Plaintiffs Adequately Allege That The Computers Were Unfit For Their Ordinary Use ................................................................................................................................... 23

    C. Named Plaintiff Baba Has Adequately Pleaded A Claim For Breach Of Express Warranty. .......................................................................................................................... 24

CONCLUSION.............................................................................................................................. 25

Named Plaintiffs' Response to HP's Motion to Dismiss Plaintiffs' Second Amended Complaint
Case No. 5:09-CV-05946 RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ackerman v. Northwestern Mutual Life,* 172 F.3d 467 (7th Cir. 1999) ........................................ 7

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................. 2, 10

*Back v. Wickes Corp.*, 375 Mass. 633 (1978) .................................................................. 24

*Bardin v. DaimlerChrysler Corp.,* 136 Cal. App. 4th 1255 (2006) ............................................ 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 1, 2, 10

*Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. 2010) ................................... 12

*Burnham v. Mark IV Homes, Inc.*, 441 N.E.2d 1027 (Mass. 1982) ............................................. 23

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .......................................................... 2

*California Pollution Control Fin. Auth. v. Agajanian,* 1993 U.S. App. LEXIS 8794 (9th Cir. 1993). ...................................................................................................................... 3

*Carideo v. Dell, Inc.,* 2010 U.S. Dist. LEXIS 37978 (W.D. Wash. Feb. 12, 2010). .................... 14

*Cel*-Tech *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999). ......... 17

*Chavez v. Bank of Am., N.A.,* 2010 U.S. Dist. LEXIS 44369 (E.D. Cal. May 5, 2010) ................ 6

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................... 1

*Daugherty v. American Honda Co., Inc.*, 144 Cal. App. 4th 824 (2006) ..................................... 14

*Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) ....................... 3, 14

*Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246 (9th Cir. 1997) .................................................. 1

*Hale v. Sharp Healthcare*, 183 Cal.App.4th 1373, 108 Cal. Rptr. 3d 669 (2010)........................ 5

*Hovsepian v. Apple, Inc.,* 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. 2009). .............................. 13

*Iannacchino v. Ford Motor Co.*, 21 Mass. L. Rep. 661 (Mass. Super. Ct. 2006)........................ 23

*Kent v. Hewlett-Packard Co.,* 2010 U.S. Dist. LEXIS 76818 (N.D. Cal. July 6, 2010) .............. 21

*Kumpis v. Wetterau*, 586 F. Supp. 152 (E.D. Mo. 1983) ............................................................ 7

*Marsikian v. Mercedes Benz USA, LLC,* 2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009)
.................................................................................................................................... 14

*Miller v. Allstate*, 489 F. Supp. 2d 1133 (S.D. Cal. 2007) ............................................................ 7

*Morgan v. Harmonix Music Sys.*, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) ......... 21

*New London County Ins. Co. v. Broan-NuTone, LLC*, 21 Mass. L. Rep. 272 (Mass. Super. Ct.
2006) ....................................................................................................................................... 22

*Pareto v. F.D.I.C*, 139 F.3d 696 (9th Cir. 1998) ........................................................................... 2

*Santosuosso v. Gibbs Ford, Inc.,* 1992 Mass. App. Div. 167 (1992) ........................................... 24

*Slater v. Burnham Corp*. 343 NE2d 885 (Mass. App. 1976) ....................................................... 23

*Tietsworth v. Sears, Roebuck and Co*., 2010 U.S. Dist. LEXIS 44053 (N.D. Cal. Mar. 31, 2010)
.................................................................................................................................... 14

*United States v. Hempfling*, 431 F. Supp. 2d 1069 (E.D. Cal. 2006) ............................................ 2

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ...................................................... 1

*Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) ................................................... 3

*Zinn v. Ex-Cell-O Corp.,* 148 Cal. App. 2d 56, 68 (1957) .......................................................... 17

**Statutes**

ALM GL ch. 106, § 2-314 ........................................................................... 24

ALM GL ch. 106, § 2-318 ........................................................................... 22

Cal. Bus. & Prof. Code §17200 ................................................................... 1

Cal. Civ. Code § 1709 ................................................................................ 19

Cal. Civ. Code §1572 ................................................................................. 17

Cal. Civ. Code §1710 ................................................................................. 19

Cal. Civ. Code §1770 ................................................................................... 9

Cal. Civ. Code. §1573 ............................................................................... 18

Cal. Civ. Code. §1750 ................................................................................. 1

Cal. U. Com. Code § 2313 ........................................................................... 6

iv

**Rules**

Fed. R. Civ. Proc. 12 .......................................................................................................... 2, 4

Fed. R. Civ. Proc. 8 ............................................................................................................. 2

Fed. R. Civ. Proc. 9 ............................................................................................................. 2

1

**<u>INTRODUCTION</u>**

2      Named Plaintiffs David Baba and Ray Ritz have submitted to this Court a Second

3 Amended Complaint ("SAC") that tells a coherent and plausible story of how Defendant Hewlett

4 Packard Company manufactured and sold a tablet notebook computer that contained a design

5 defect which caused the computer's cursor to randomly jump to the lower right portion of the

6 screen, a condition that significantly impaired the notebook's usefulness as a notebook computer.

7 Named Plaintiffs have explained, in detail, what HP communicated to them prior to the sale

8 about the features and condition of the notebook, and how they purchased and did not cancel the

9 sale in reliance on those communications.  Named Plaintiffs have plausibly explained why they

10 believe that HP knew of the defect, and have provided as support for this contention the stories

11 of both Named Plaintiffs and other HP customers (and potential class members) who

12 experienced the problem and who, in many cases, turned to HP for help.  Named Plaintiffs have

13 described HP's response to these complaints in detail, and explained why the response was

14 inadequate and in breach of HP's warranties to Named Plaintiffs and the Class.   In sum, Named

15 Plaintiffs have adequately pleaded their claims for violations of California's Civil Legal

16 Remedies Act ("CLRA"), Cal. Civ. Code. §1750 et seq., California's Unfair Competition Law

17 ("UCL"), Cal. Bus. & Prof. Code §17200, and breach of express and implied warranties.

18      **<u>STANDARD OF REVIEW</u>**

19      The Ninth Circuit disfavors granting Rule 12(b)(6) motions. *Gilligan v. Jamco Develop.*

20 *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)("The motion to dismiss for failure to state a claim is

21 viewed with disfavor and is rarely granted."). Indeed, the Ninth Circuit has made clear that

22 dismissal is proper only in "extraordinary" circumstances. *United States v. Redwood City*, 640

23 F.2d 963, 966 (9th Cir. 1981). *Accord Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)("A complaint

24 should not be dismissed for failure to state a claim unless it appears beyond doubt that the

25 plaintiff can prove no set of facts in support of his claim which would entitle him to relief."), *Bell*

26 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(The Court should only dismiss a complaint

27 where the plaintiff's claims are purely speculative and unsupported by the alleged facts and

28 circumstantial evidence.)

1
2
3
4
5
6

In evaluating HP's Rule 12(b)(6) motion, this Court must construe the complaint in the light most favorable to Named Plaintiffs (*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996)), and accept as true all allegations in the complaint and the reasonable inferences drawn therefrom (*Pareto v. F.D.I.C*, 139 F.3d 696, 699 (9th Cir. 1998)).   Named Plaintiffs must comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure, and with respect to those matters grounded in fraud, with Rule 9(b) of the Federal Rules of Civil Procedure.

7
8
9
10
11
12
13
14
15
16
17

In order to comply with Rule 8(a), Named Plaintiffs are required to set forth a "short and plain statement  of the claim showing that [they] are entitled to relief."  A complaint will not be dismissed under Rule 12(b)(6) if two minimum hurdles are cleared: (1) the Complaint must describe the claim in sufficient detail to give the Defendant fair notice of what the claim is and the grounds upon which it rests; and (2) the Complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a level of speculation. *Twombly*, 550 U.S. at 544-55.  "Plausibility," as it is used in *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

18
19
20
21
22
23
24
25
26
27

Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity. When, as here, the fraud is alleged to have occurred over a period of time, the specificity requirement is less stringently applied. *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006). The purpose behind Rule 9(b)'s pleading requirement is to put defendants on notice of the specific fraudulent conduct such that they are able to adequately defend such allegations.   Thus, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* at 671-72 (citations and internal quotes omitted). Further, in cases alleging fraud by omission, the specific time, place, and content of an omission cannot be reasonably pled, since there is no specific act being pled, and thus fraudulent omission claims

28

1
2
can proceed "without the same level of specificity required by a normal fraud claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (citations omitted).

3
4
5
6
7
8
9
10
11
12
These standards must be weighed against the fact that Named Plaintiffs' claims of fraud are brought in the context of the CLRA and UCL, two consumer protection statutes.  The Ninth Circuit, in overturning a trial court's Rule 12(b)(6) dismissal of false and deceptive advertising claims brought pursuant to these statutes,  noted that "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer" and that the granting of a pre-discovery motion to dismiss UCL and CLRA claims is inappropriate and reversible error, except in the most "rare situation." *See Williams v. Gerber Products Co., 552 F.3d 934, 938-939 (9th Cir. 2008).* When the SAC is measured against these standards, it is clear that dismissal is improper.

13
## ARGUMENT OF LAW

14
15
I.      **NAMED PLAINTIFFS HAVE ADEQUATELY PLEADED THAT THEY RELIED ON HP'S MISREPRESENTATIONS**

16
17
18
19
20
21
22
23
24
It is well settled that "reliance" is nothing more than a prejudicial change in position by one party because of another's statement or promise.   See., e.g., *California Pollution Control Fin. Auth. v. Agajanian,* 1993 U.S. App. LEXIS 8794 (9th Cir. 1993).   HP contends that Named Plaintiffs have not pleaded reliance with the particularity required by Civ. R. 9(b) because it believes that the Named Plaintiffs have failed to state that they saw or heard any of the affirmative misrepresentations alleged.  To the contrary, Named Plaintiffs make very specific allegations that they did, in fact, rely upon the identified representations, both in making the decision to purchase the computer and in not voiding the purchase during the period allowed by HP for return of the merchandise.

25
26
   A.  **Named Plaintiffs have Adequately Pleaded That They Relied on HP's Description of the Notebooks As Containing Tablet Or Touchscreen Features.**

27
28

3

1
2   With respect to HP's representation that the computers contain "tablet" or "touchscreen"
features, Named Plaintiffs have alleged:[1]

3
4   20. The notebook computers at issue are marketed as "tablet" or
5   'touchscreen" computers, that is, a notebook computer equipped
with a touch screen which allows the user to operate the computer
with a stylus, digital pen, or a fingertip, instead of a keyboard or
6   mouse. The "tablet" or "touchscreen" features are advertised
widely by HP, are listed as a feature of the computer on all online
7   and in-store descriptions shown to all consumers at the point of
sale, and were/are material to a consumer's decision to purchase
these particular models over other notebook computers.

8
9   28. Named Plaintiff David Baba purchased his HP TX series
computer on or about November 29, 2008 from Sam's Club in
10  Tucson, Arizona. In making the decision to purchase the notebook,
Plaintiff Baba relied on HP's representations that the computers
11  contained "tablet" or "touchscreen" features, representations which
were touted by the company in its description of the notebooks
12  made available to every purchaser at the point of sale. These
representations were material to Plaintiff Baba's decision to
purchase his particular model over other notebook computers.

13
14  35. Mr. Ritz purchased his HP TX 2000 series computer from HP
on or about March 25, 2008. In making the decision to purchase
15  the notebook, Plaintiff Ritz relied on HP's representations that the
computers contained "tablet" or "touchscreen" features,
16  representations which were touted by the company in its
description of the notebooks. These representations were material
17  to Plaintiff Ritz's decision to purchase his particular model over
other notebook computers.

18  Thus, Named Plaintiffs have alleged that the computer is described by HP as having
19  tablet or touchscreen features, that this description is made available to every purchaser at the
20  point of sale, and each of the Named Plaintiffs relied upon this description in deciding to
21  purchase this particular computer over other models.  It is difficult to imagine what further detail
22  Named Plaintiffs should be required to plead in order to reasonably conclude that Named

23
24  [1] As indicated in our response to HP's first Motion to Dismiss, Named Plaintiffs do not
25  allege that the representation concerning the tablet properties of the computers was false in and
26  of itself; rather, the description is misleading because it is those very characteristics that result in
27  these computers being defective.  Compl ¶ 23.
28

Named Plaintiffs' Response to HP's Motion to Dismiss Plaintiffs' Second Amended Complaint
Case No. 5:09-CV-05946 RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs did see and read the description of the computers as "tablet" computers.  When these allegations are measured against the standard set forth in Civ. R. 12(b), it simply cannot be said that Named Plaintiffs will be unable to prove any set of facts which will demonstrate they relied upon the identified misrepresentation.

In addition to the allegations identified above, Named Plaintiffs have pleaded that they purchased the computers with the expectation that it would function as a tablet computer.  SAC ¶ 62.  Allegations that a party entered into a transaction with an expectation that it would conform to the other party's representations are sufficient to plead reliance under the CLRA.  *Hale v. Sharp Healthcare*, 183 Cal.App.4th 1373, 1386-87, 108 Cal. Rptr. 3d 669 (2010).  The *Hale* court, in noting the importance of giving a Complaint a reasonable interpretation, held:

> The SAC alleges [plaintiff] signed the Admission Agreement, and "at the time of signing the contract, she was *expecting* to be charged 'regular rates,' and certainly not the grossly excessive rates that she was subsequently billed." (Italics added.) … We must interpret the complaint reasonably, "reading it as a whole and its parts in their context." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.  ) As Hale notes, the "difference between 'expecting' to be charged regular rates and 'relying' on being charged regular  rates is a distinction without a difference."  We see no utility in requiring [plaintiff] to amend her complaint to exchange the term "expecting" for the term "relying."

*Id*. at 1385-86.

### B. Named Plaintiffs Have Adequately Pleaded That They Relied Upon The Representations Made By HP In Its Warranty.

Named Plaintiffs also allege that they "purchased the computer with the expectation that it … would be free from defects, and that if a defect existed it would be repaired properly by HP." :

> 62. The misrepresentations referred to above were material, and were relied upon by Named Plaintiffs to their detriment. Named Plaintiffs purchased the computer with the expectation that it would function as a "tablet" computer that it would be free from defects, and that if a defect existed it would be repaired properly by HP.

Moreover, Named Plaintiffs allege that they took specific action as a result of the representations made in the warranty:

5

44. Named Plaintiffs relied on the existence and terms of the warranty both in making the decision to purchase the notebooks and in that they did not void the sale by returning the notebooks within the period within which returns are permitted by HP and/or its retailers.

As the *Hale* court noted, the Complaint must be interpreted reasonably. As a matter of law, it is not unreasonable to conclude that a party has reasonably relied upon the description of the goods in deciding to purchase the goods. This is in accord with accepted commercial practice, practices which, as a manufacturer and the only party to the warranty with the ability to choose its words carefully, HP is no doubt well aware.

In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

Cal. U. Com. Code § 2313, Comment 3. Named Plaintiffs have specifically alleged:

19. The representation that the computers are "free from defects in materials and workmanship under normal use during the warranty period" is contained in the warranty that accompanies each notebook at the time of sale, and is therefore part of the description of the goods and goes to the basis of the bargain between HP and the purchaser.

For all of the foregoing reasons, Named Plaintiffs have more than adequately pleaded reliance on HP's affirmative representations.

## II.    HP'S AFFIRMATIVE MISREPRESENTATIONS  ARE OF THE SORT THE CLRA WAS DESIGNED TO REMEDY

Rule 9(b)'s requirement that the circumstances of fraud be pleaded with particularity is often said to be designed to "put defendants on notice of the specific fraudulent conduct in order to enable them to adequately defend against such allegations." *Chavez v. Bank of Am., N.A.,* 2010 U.S. Dist. LEXIS 44369 (E.D. Cal. May 5, 2010).   Its' purpose is not to allow a defendant to feign ignorance in the face of specific allegations, nor to demand the production of evidence at the pleading stage of the litigation.   "Even in a fraud case, defendants are not entitled to a pleading containing every evidentiary detail of plaintiff's claim. The ascertainment of some facts

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

must await discovery." *Kumpis v. Wetterau*, 586 F. Supp. 152, 154 (E.D. Mo. 1983).  "A charge of fraud is no more opaque than any other charge. The defendant can get all the information he needs to meet it by filing a contention interrogatory." *Abarca v. Merck & Co.,* 2010 U.S. Dist. LEXIS 26423 (E.D. Cal. Mar. 16, 2010), citing *Ackerman v. Northwestern Mutual Life,* 172 F.3d 467, 469 (7th Cir. 1999).

### A.  Named Plaintiffs Have Pleaded the Circumstances Under Which HP Misrepresented The Condition of the Notebooks With Particularity

An examination of HP's contention on this point demonstrates that its position is wholly without merit.   HP argues that "Plaintiffs still have not pleaded with particularity the "contents of the misrepresentation[s],", "*when* [they] occurred," "*where* [they] occurred," and "*how* [HP] perpetrated [them]" , Motion to Dismiss, pg. 9, citing *Miller v. Allstate*, 489 F. Supp. 2d 1133, 1139 (S.D. Cal. 2007).  However, as the allegations above make clear, Named Plaintiffs have in fact pleaded the *content* of the misrepresentations by specifically identifying the misrepresentations as (1) HP's representation that the computers functioned as tablet computers (2) HP's representation that the computers were free from defect and (3) if a defect existed, it would be repaired.  Named Plaintiffs have pleaded the "*when*" and "*where*" by pleading that (1) the representation that the computers functioned as tablet computers is part of the description shown to every purchaser, including the Named Plaintiffs, at the point of sale (SAC ¶ 20, 28); (2) HP's representations that the computers were free from defects and, if a defect existed it would be repaired, are part of the description of the goods specifically set forth in the product warranty that accompanies every notebook at the time of sale  (SAC ¶19).  Named Plaintiffs have pleaded the "*how*" by pleading that (1) HP included the representation that the computers function as tablet computers in its description of the goods shown to each purchaser at the point of sale and that (2) the representations contained in the warranty are given to each purchaser at the point of sale.  SAC ¶ 19.  It is difficult to imagine what further description could be provided without blurring the line between allegation and evidence.

### B.  Plaintiffs specifically allege the representations were untrue

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In arguing that Named Plaintiffs have failed to allege that the identified affirmative representations were untrue or otherwise actionable, HP misconstrues this Court's prior order with respect to the  representations contained in the warranty.   This Court did not, as HP claims, find that these representations were not actionable; rather, it found that in order to be actionable under the CLRA, Named Plaintiffs will be required to prove that HP was aware of the falsity of the statements at the time Named Plaintiffs purchased the computers.   Order at pg. 7 ("Similarly, the

failure to fulfill promises under a limited warranty is simply a contractual breach that does not become actionable under CLRA without proof of more, such as the fact that the defendant sold a product it was aware was defective.").  Named Plaintiffs have alleged:

> 38. As of at least November 29, 2008, the date Plaintiff Baba purchased his TX2000, HP knew that the subject computers were experiencing significant and disabling problems with a jumping cursor. It obtained this knowledge through customer complaints communicated directly to HP through channels it has created to receive communications about service issues from its customers and because of the legion of complaints posted on hp.com and other internet message boards such as those reproduced above.

Thus, Named Plaintiffs allege that HP had knowledge of the problem because its customers sought warranty service to repair the problem.  In support of this contention, and as discussed more fully below, Named Plaintiffs have reproduced several pages of complaints from web sites, including HP.com, in which users describe their problems with the computer and their attempts to resolve those issues with HP.   SAC ¶ 24.   Several of those complaints indicate that the problem was reported to HP prior to the date Mr. Baba purchased his computer.   These allegations are sufficient to plausibly state a claim under the CLRA based upon the representations in the warranty.

With respect to the representation that the computers have tablet or touchscreen capabilities, Named Plaintiffs do not contend that these allegations are false in and of themselves; rather, the description becomes misleading because it is this characteristic that causes the computers to be defective.   Named Plaintiffs have alleged:

20. The notebook computers at issue are marketed as "tablet" or 'touchscreen" computers, that is, a notebook computer equipped with a touch screen which allows the user to operate the computer with a stylus, digital pen, or a fingertip, instead of a keyboard or mouse. The "tablet" or "touchscreen" features are advertised widely by HP, are listed as a feature of the computer on all online and in-store descriptions shown to all consumers at the point of sale, and were/are material to a consumer's decision to purchase these particular models over other notebook computers.

21. Notebook computers produce significant amounts of heat due to the number of components confined within a relatively small space. The notebook computers at issue contain a cooling fan that works to reduce the internal temperature of the notebook. In these models, the cooling fan is located on the right side of the notebook, just above the keyboard panel.

22. In the case of the computers at issue, the operation of the cooling fan continually draws the cursor to the lower right hand portion of the screen. This significantly interferes with normal operation of the notebook.

23. Sophisticated users have figured out that the problem can be temporarily resolved by disabling the "tablet" or "touchscreen" functions of the computer in the computer's hardware profile. These functions are the distinguishing characteristic of these computers. Thus, the defect present in these computers affects the very essence of unique features of these computers.

Thus, the claimed violation of the CLRA is not that the computer is not a tablet or touchscreen computer, but that purchasers do not receive the benefit of the salient feature of these computers.   In short, HP is selling something that doesn't work the way it is described, and that is precisely the situation that the CLRA is designed to redress.[2]

**III.   NAMED PLAINTIFFS HAVE ADEQUATELY PLEADED THAT HP WAS UNDER A DUTY TO DISCLOSE THE DEFECT TO PURCHASERS**

**A.  Plaintiffs have adequately pleaded that HP had knowledge of the defect at the time Mr. Baba purchased the computer.**

---

[2] Cal. Civ. Code §1770(a)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have".

1
2
3
4
5

HP continues to argue for a standard for pleading knowledge under Rule 9(b) that simply does not exist.  The decisions of the Supreme Court in *Iqbal* and *Twombly* have not altered Rule 9(b)'s directive that "knowledge … may be alleged generally."   As this Court recognized in ruling on HP's first Motion to Dismiss,

6
7
8
9
10
11

> The requirement for pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud" because Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Nonetheless, plaintiffs must still satisfy the requirements of Rule 8; therefore, conclusory averments of scienter, without reference to a factual context, are insufficient and not entitled to be presumed true. *Iqbal*, 129 S. Ct. at 1951 (citing *Twombly*, 550 US at 554-555).

12
13
14
15
16
17

Order on Motion to Dismiss at pg. 4.   A complaint meets the "plausibility" test if it tells a coherent story and "suggest[s]" the required elements of the plaintiff's claim. *Twombly*, 550 U.S. at 556.   Plausibility does *not* depend on any showing of probable or likely success: to the contrary, a claim may proceed even if actual proof is "improbable" and ultimate recovery "unlikely." *Twombly*, 550 U.S. at 556 ; *see also Iqbal*, 129 S.Ct. at 1949.  Named Plaintiffs' allegations concerning HP's knowledge of the defect must be analyzed within this framework.

18
19

Named Plaintiffs allege that HP became aware of the defect prior to the time Named Plaintiff Baba purchased his computer:[3]

20
21
22
23
24

> 38. As of at least November 29, 2008, the date Plaintiff Baba purchased his TX2000, HP knew that the subject computers were experiencing significant and disabling problems with a jumping cursor. It obtained this knowledge through customer complaints communicated directly to HP through channels it has created to receive communications about service issues from its customers and because of the legion of complaints posted on hp.com and other internet message boards such as those reproduced above.

25
26
27
28

---

[3] Named Plaintiffs assert the CLRA claim on behalf of Mr. Baba only.

These allegations are not merely conclusory; Named Plaintiffs identify two methods through which HP gained knowledge of the defect (1) customer complaints it received directly through the channels it has created to receive customer communications about service issues and (2) customer complaints, including those reproduced at pages 6 through 25 of the Complaint.  In addition, Named Plaintiffs have detailed the response that HP provided to these Complaints:

> 25.  On information and belief, and as described in the complaint postings listed above, customers who contact HP about this problem during the warranty period are given a variety of explanations for the problem, none of which actually resolve the problem. Some consumers are told that the problem is caused by the computer's touchpad, and are asked to adjust the sensitivity of that device. Other consumers are directed to download replacement drivers for the touchpad. Still others are told that they must perform a system restore, erasing all of their files in the process, even though the problem exists out of the box.

> 26. Consumers who are persistent with HP's customer service and are invited to return their notebooks to HP for warranty service fare no better. HP seemingly randomly replaces the motherboard, digitizer, touchpad, keyboard, LCD screen, fan or hard drive on affected computers, all without resolving the problem. Furthermore, HP decreases the advertised performance of the processor in an effort to address the problem. In the process, HP eradicates all of the data on the consumer's hard drive, by performing a system restore.

SAC ¶ 25-26.    The "story" told by the Complaint is that that HP manufactured a computer that exhibited a significant and disabling defect **out of the box** (SAC ¶ 25, 38) which rendered the notebook unfit for ordinary use (SAC ¶ 2), HP learned of the defect through customer complaints, both online and those it received directly from customers seeking repair of the problem, and it continuedto sell those computers  after learning of the defect.    When the allegations of the Complaint are accepted as true, it is clear that it is entirely plausible that HP gained knowledge of the defect in the manner alleged by Named Plaintiffs.   It is certainly less plausible, when the allegations of the Complaint are taken as true, to suggest that HP would not have received a single complaint about a product that contained a disabling defect and had been on the market for at least eight months (the time between the date Named Plaintiff Ritz purchased his computer and the date Named Plaintiff Baba purchased his).  It is even less plausible to suggest that HP, after receiving complaints, remained unaware of the defect.

1
2
3
4
5
6

Named Plaintiffs cite to customer complaints posted on the internet as support for its allegations that HP had reason to know of the defect.   In ruling on the initial Motion to Dismiss, this Court found Named Plaintiffs allegations concerning these customer complaints to be too generalized because the Complaint did not include the dates of the cited postings, and "therefore shed no light on when HP knew of the alleged defects."  The Second Amended Complaint includes significantly more posts than the first, as well as the date of the cited posts.

7
8
9
10
11
12
13
14

Nine of the cited posts describe the poster having complained directly to HP prior to the date Mr. Baba purchased his computer.  At some point in time, HP removed all "jumping cursor" related posts originally made prior to November 25, 2008 from the consumer support forums on hp.com, but the Complaint does cite one that was available on a cached version of an hp.com web page.  Named Plaintiffs cite to these available complaints to demonstrate that it is plausible that purchasers of these computers (1) experienced a problem with their computer; (2) complained to HP about that problem; and (3) received a response from HP that did not conform to its obligations under the warranty.

15
16
17
18
19

HP's reliance on *Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. 2010) is misplaced.  In *Berenblat*, the court held simply that a single internet post which accused Apple of having removed a thread from its message board was not sufficient to substantiate a claim of that Apple sought to conceal the defect.   The court did, however, agree that the post could establish knowledge that there were complaints about the defect alleged:

20
21
22
23
24
25
26
27

> Similarly, the complaints posted on Apple's consumer website merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that Apple had knowledge that the memory slot in fact was defective and sought to conceal that knowledge from consumers. The only allegation arguably reflecting an intent to conceal is that Apple deleted a discussion thread containing over 350 posts from its website. SAC P 32. Like the conversation between a single washing machine purchaser and a store representative in *Tietsworth*, in which the representative allegedly stated that the specific machine could be expected to last up to eight years, this single statement is insufficient to support a claim of corporate fraud. See *Tietsworth*, 2009 U.S. Dist. LEXIS 98532, 2009 WL 3320486 at *FN3. At most the posting establishes knowledge that there were complaints about the memory card problem.

28

*Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052, 27-28 (N.D. Cal. Apr. 7, 2010).

**B.  Named Plaintiffs Have Adequately Pleaded That HP Had a Duty To Disclose The Defect**

As this Court indicated in its ruling on the initial Motion to Dismiss, a manufacturer's duty to disclose a known defect arises under four circumstances:

> A plaintiff may "successfully pursue a CLRA claim [based on a fraudulent omission], despite *Daugherty* and *Bardin*, if [the manufacturer] was 'obliged to disclose' the potential for problems." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007). A duty to disclose exists if one of the following four circumstances is present: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the defendant makes partial representations but also suppresses some material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326,337, 60 Cal. Rptr. 2d 539 (1997).

*Hovsepian v. Apple, Inc.,* 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. 2009). In this instance, all but the first are met.

**1.   HP Had Superior Knowledge of The Defect**

Named Plaintiffs have alleged that HP, as the manufacturer of the computer, had exclusive knowledge concerning the defect.  SAC ¶ 45.   With respect to this knowledge, Named Plaintiffs allege:

> 38. As of at least November 29, 2008, the date Plaintiff Baba purchased his TX2000, HP knew that the subject computers were experiencing significant and disabling problems with a jumping cursor. It obtained this knowledge through customer complaints communicated directly to HP through channels it has created to receive communications about service issues from its customers and because of the legion of complaints posted on hp.com and other internet message boards such as those reproduced above.

> 39. As of at least November 29, 2008, the date Plaintiff Baba purchased his TX2000, HP knew that the solutions it was providing to those purchasers who complained about the jumping cursor were not resolving the defect, as seen from the internet postings reproduced above.

1
2
3
4
5
6

> 40. Despite the knowledge that the computers were defective and that HP could not repair them through either software fixes, replacing items such the touchpad, keyboard or screen, or attempting to repair the computers by decreasing the processing performance from its advertised specifications, HP continued to offer the computers for sale to Named Plaintiff Baba and putative class members, with representations that the computers were free from defect, and that it would properly repair any problems with the computers.

7    HP attempts to dismiss these allegations as conclusory, but clearly they are not.

8    Named Plaintiffs have coherently and plausibly described how HP came into possession of the

9    knowledge, what it knew, and when it knew it. "[A] plaintiff can establish that a duty exists if

10   she alleges facts showing that the defendant knew of the alleged defect and did nothing to fix it

11   or alert customers to its existence. *Tietsworth v. Sears, Roebuck and Co.*, 2010 U.S. Dist. LEXIS

12   44053 (N.D. Cal. Mar. 31, 2010), citing *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088,

13   1099 (N.D. Cal. 2007).

14
15
16
17
18
19

> "When such a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information." *Zwicker* v. *v. Gen. Motors Corp.,*] 2007 U.S. Dist. LEXIS 99310, 2007 WL 5309204, at *3; see *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wn. App. 39, 554 P.2d 349, 358 (Wash. Ct. App. 1976). n12 Plaintiffs have pleaded that Dell was in a superior position to know the facts about the hidden defects in the computers (Am. SAC P 9.4), and common sense dictates that the defects alleged by Plaintiffs [premature failure of components] are not of the sort readily ascertainable to the average customer.

20   *Carideo v. Dell, Inc.,* 2010 U.S. Dist. LEXIS 37978, 27-28 (W.D. Wash. Feb. 12, 2010).

21   HP's reliance on *Oestreicher* is similarly misplaced.   There, the court's concern was

22   focused upon the fact that the defect at issue therein manifested outside of the warranty period, a

23   warranty period whose length was chosen by the purchaser at the point of sale. *Id.* at 967.   In

24   this instance, the defect manifests during the warranty period.  See, e.g., *Marsikian v. Mercedes*

25   *Benz USA, LLC,* 2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009)"(In [*Daugherty v.*

26   *American Honda Co., Inc.*, 144 Cal. App. 4th 824 (2006) *and Bardin v. DaimlerChrysler Corp.,*

27   136 Cal. App. 4th 1255 (2006)], the appellate courts dismissed the CLRA claim because

28   plaintiffs failed to allege facts showing that the manufacturer had any duty to disclose the alleged

14

defect. *Bardin*, 136 Cal. App. 4th at 1276; *Daugherty*, 144 Cal.App.4th at 836. In these two cases, ***the problems surfaced only after the expiration of the car's warranty.''*)(emphasis supplied).

### 2. HP Actively Concealed the Defect.

With respect to HP's active concealment of the defect, Named Plaintiffs have alleged:

> 46. HP had a duty to disclose the defect to Named Plaintiffs and Class Members because it actively concealed the defect by failing to make any attempt to notify customers of the defect, despite the numerous complaints that it received, and by representing to purchasers that the defect could be repaired by software fixes or replacing items such as the touchpad, screen, or keyboard, when it knew that the defect could not be repaired through any of these methods.

Named Plaintiffs detail the representations made to customers who complain about the problem:

> 25. On information and belief, and as described in the complaint postings listed above, customers who contact HP about this problem during the warranty period are given a variety of explanations for the problem, none of which actually resolve the problem. Some consumers are told that the problem is caused by the computer's touchpad, and are asked to adjust the sensitivity of that device. Other consumers are directed to download replacement drivers for the touchpad. Still others are told that they must perform a system restore, erasing all of their files in the process, even though the problem exists out of the box.

> 26. Consumers who are persistent with HP's customer service and are invited to return their notebooks to HP for warranty service fare no better. HP seemingly randomly replaces the motherboard, digitizer, touchpad, keyboard, LCD screen, fan or hard drive on affected computers, all without resolving the problem. Futhermore, HP decreases the advertised performance of the processor in an effort to address the problem. In the process, HP eradicates all of the data on the consumer's hard drive, by performing a system restore.

> 27. Customers who visit hp.com seeking support find that HP employees advise them that "Touchpad is too sensitive. hands are brushing the pad while you type"

***

> 32. HP returned the computer to Mr. Baba with an indication that it had replaced the screen on the computer. It did not, however, inform him that it had reduced the computer's processor speed to 50% of its capacity. The reduction of processor speed is often cited by internet complainants as a way to reduce or eliminate the jumping cursor, because the slower the processor, the less heat produced by the computer, resulting in a slower fan rotation.

HP ignores the allegations at ¶¶ 25-27 and 32, and claims that Named Plaintiffs' charge of active concealment as set forth in ¶ 46 is "conclusory".   In fact, it is not.   HP's argument wholly overlooks Named Plaintiffs' allegations concerning HP's response to consumer complaints and its attempt at concealing the inadequate repair made to Mr. Baba's computer.   In those allegations, Named Plaintiffs have coherently described the manner in which HP concealed the defect.

Moreover, HP's reliance on *Oestricher, Hoey,* and *Tietsworth* for support of its assertion that Named Plaintiffs' allegations are conclusory is misplaced.   In In re NVIDIA GPU Litig., 2009 U.S. Dist. LEXIS 108500, 34-35 (N.D. Cal. Nov. 19, 2009), the plaintiff's allegation concerning active concealment consisted of the following:

> Defendant actively concealed a material fact from Plaintiffs--the product defect. (ACC PP 2, 32, 42, 117, 135-36.) Plaintiffs would not have purchased the defective products had they known about the defect. (Id. P 44.) The defect caused computer failures throughout the life of the computers, which would include use within the warranty period. (See id. PP 5, 29, 51, 54.)

The court found this allegation "adequately alleged concealment of a material fact – the product defect." *Id.* Moreover, the Court dismissed the defendant's reliance upon *Oestreicher, Daugherty* and *Bardin* to claim that no duty existed because "those cases all dealt with product failures that manifested after the warranty period expired." *Id.*

### 3. HP Made Partial Representations Concerning The Characteristics of the Computer

The final circumstance under which a duty to disclose arises is where a party makes a partial representation but suppressed material facts which would have qualified that representation.  Order on Motion to Dismiss at pg. 7.  HP chose not to address this circumstance,

1
2
3
4

instead claiming that it is inapplicable because Named Plaintiffs have failed to adequately plead partial representations by HP.  As discussed above, Named Plaintiffs have adequately pleaded the content of those representations.

5

## IV.  NAMED PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM UNDER THE UCL

6

### A.  Named Plaintiffs Have Identified Conduct Which Violates California Law.

7
8
9
10
11
12

An act is "unlawful" under § 17200 if it violates an underlying state or federal statute or common law. *Cel*-Tech *Communications, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 180 (1999).  As this Court indicated in ruling on the initial Motion to Dismiss, a claim under this statute may be predicated on just about any statute.   Order on Motion to Dismiss at pg. 9. Named Plaintiffs have identified four separate statutes which they allege that HP has violated by the conduct described in the Complaint.

13
14
15
16

In its Order on the first Motion to Dismiss, this Court stated that to properly plead a claim for violation of these statutes, Named Plaintiffs would have to "plead with particularity how the facts of this case pertain to that specific statute."  Named Plaintiffs have done so, as set forth below.

17
18
19
20
21
22
23
24

HP contends that Named Plaintiffs "have based their claims that each statute was violated on the exact same factual allegations."  While, as described below, there are subtle differences in each statute, HP's assertion is for the most part correct.  That is because each of the statutes at issue addresses deceptive conduct, though with subtle differences.  *See, e.g., Zinn v. Ex-Cell-O Corp.,* 148 Cal. App. 2d 56, 68 (1957) ("Actual fraud" and "deceit" are defined in similar terms by the code. Civ. Code, §§ 1572, 1709, 1710.")  It should come as no surprise that the conduct of which Named Plaintiffs complain forms the basis of its allegations that these statutes have also been violated.

25

#### 1.  Cal. Civ. Code § 1572

26
27

Cal. Civ. Code §1572 sets forth the elements of actual fraud between the parties to a contract.  The statute provides:

28

1

2

3

Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

4

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

5

6

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

7

8

3. The suppression of that which is true, by one having knowledge or belief of the fact;

9

4. A promise made without any intention of performing it; or,

10

5. Any other act fitted to deceive.

11

Cal. Civ Code § 1572.   In addition to the factual allegations set forth *infra*, Named Plaintiffs

12

have alleged:

13

14

15

16

17

18

19

55. HP violated California Civil Code § 1572 by, for the purpose of inducing Named Plaintiff Baba and Class Members to purchase the notebooks, (1) representing that the notebooks had "tablet" or "touchscreen" capabilities without disclosing that those capabilities coupled with the computer's design led to a substantial defect in the notebooks; (2) representing that the notebooks were free from defects when HP knew that to be untrue; (3) failing to disclose the defect despite having knowledge of it at the time the notebooks were sold to Named Plaintiff Baba and Class Members; and (4) by representing in its warranty that it would repair any defect that existed without having the intention to perform that promise.

20

Named Plaintiffs have thus adequately pleaded the elements of this particular statute.

21

**2.  Cal. Civ. Code § 1573**

22

23

24

25

Cal. Civ. Code. §1573 proscribes constructive fraud, i.e., fraud that exists in the context of  a relationship where a duty is owed.   A violation of this statute contains all of the same elements of a violation of Cal. Civ. Code § 1572, with the exception that proof of intent to deceive is not required.   The statute provides:

26

Constructive fraud consists:

27

28

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his

18

prejudice, or to the prejudice of anyone claiming under him; or,

    2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

Cal Civ Code § 1573.  In addition to the factual allegations set forth infra (including those pertaining to HP's duty to disclose the defect), Named Plaintiffs have alleged:

56. HP violated California Civil Code § 1573 by (1) representing to Named Plaintiff Baba and Class Members that the notebooks had "tablet" or "touchscreen" capabilities without disclosing that those capabilities coupled with the computer's design led to a substantial defect in the notebooks; (2) representing that the notebooks were free from defects when HP knew that to be untrue; (3) failing to disclose the defect despite having knowledge of it at the time the notebooks were sold to Named Plaintiff Baba and Class Members; and (4) by representing in its warranty that it would repair any defect that existed without having the intention to perform that promise.

Named Plaintiffs have thus adequately pleaded the elements of this particular statute.

### 3.  Cal. Civ. Code § 1709

This section imposes liability on "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk".   Deceit, for purposes of § 1709, is defined at Cal. Civ. Code §1710 as:

    1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

    2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

    3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

    4. A promise, made without any intention of performing it.

Cal Civ Code § 1710.  Named Plaintiffs, in addition to the factual allegations set forth in the SAC, allege that HP violated this section by:

57. HP violated California Civil Code § 1709 in that HP, with intent to induce Named Plaintiff Baba and Class Members to

19

1

2

3

4

5

6

7

> purchase the computers, willfully deceived Named Plaintiff Baba
> and Class Members by (1) representing to Named Plaintiff Baba
> and Class Members that the notebooks had "tablet" or
> "touchscreen" capabilities without disclosing that those capabilities
> coupled with the computer's design led to a substantial defect in
> the notebooks; (2) representing that the notebooks were free from
> defects when HP knew that to be untrue; (3) failing to disclose the
> defect despite having knowledge of it at the time the notebooks
> were sold to Named Plaintiff Baba and Class Members; and (4) by
> representing in its warranty that it would repair any defect that
> existed without having the intention to perform that promise.

8

Named Plaintiffs have thus adequately pleaded the elements of this particular statute.

9

10

### 4.  Cal. Civ. Code § 1770

11

Named Plaintiffs have also alleged that the CLRA violation constitutes an unlawful act

12

under the UCL.   Because Named Plaintiffs have adequately pleaded a claim under the CLRA, a

13

claim under this prong of the UCL has also been adequately pleaded.

14

### B.  Named Plaintiffs Have Identified Fraudulent Conduct

15

As HP indicates, Named Plaintiffs base their claim under the "fraudulent" prong of the

16

UCL upon the same misrepresentations, omissions and circumstances as those giving rise to their

17

claim under the CLRA.   As with the "unlawful" prong of the UCL, because Named Plaintiffs

18

have adequately pleaded the circumstances of fraud giving rise to the CLRA violation, a claim

19

under this prong of the UCL has also been adequately pleaded.

20

### C.  Named Plaintiffs Have Identified Unfair Conduct

21

HP argues that Named Plaintiffs have failed to adequately plead a claim under the

22

"unfair" prong of the UCL because (1) the conduct alleged to be unfair is the same as that

23

alleged to be fraudulent, and HP maintains that the allegations concerning fraudulent conduct are

24

deficient and (2) the injuries alleged to have resulted from HP's conduct are not substantial

25

enough to be actionable under the UCL.

26

As an initial matter, Named Plaintiffs' claim does not, as HP claims, sound entirely in

27

fraud.   In addition to allegations pertaining to HP's misrepresentations and omissions occurring

28

at the point of sale, Named Plaintiffs have also alleged that HP engaged in "unfair" conduct by

"by systematically breaching its warranty contracts with consumers; … and discouraging

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

consumers from pursuing their rights under the warranty by providing incorrect information to those consumers about the cause of, and solutions to, the cursor malfunction." SAC ¶ 59. See also SAC ¶ 25-27 and 29-34 for a description of the manner in which HP responds to purchasers seeking warranty service.

   With respect to HP's argument that the injury alleged by Named Plaintiffs is insufficient, HP recently made nearly identical arguments in *Kent v. Hewlett-Packard Co.,* 2010 U.S. Dist. LEXIS 76818 (N.D. Cal. July 6, 2010), arguments which were rejected by Judge Fogel.   Judge Fogel affirmatively found that the reduction in value of a purchased item is a substantial injury for purposes of the UCL:

> "An injury may be sufficiently substantial . . . if it does a small harm to a large number of people." *American Financial Services Asso. v. FTC*, 767 F.2d 957, 972, 247 U.S. App. D.C. 167 (D.C. Cir. 1985) (quotation omitted) (discussing substantial injury under 15 U.S.C. § 45(n)). HP allegedly failed to repair under warranty the Plaintiffs' computers, which cost between $ 1,199.00 and $ 1,378.99. (FAC P 12-14.) As discussed above, the alleged defect does not render the computers in suit unusable, but it certainly reduces their value. Read in the light most favorable to Plaintiffs, the FAC alleges that HP sold many computers that exhibit the complained-of defect and have not been repaired. Accordingly, Plaintiffs sufficiently allege a substantial injury. Likewise, the FAC, as a whole, sufficiently alleges that the failure to repair under the express warranty is not outweighed by any countervailing benefits to consumers or competition.

*Id.*  Moreover, the case upon which HP relies, *Morgan v. Harmonix Music Sys.*, No. C 08-5211, 2009 U.S. Dist. LEXIS 57528, at *16-17 (N.D. Cal. July 7, 2009) involved a situation in which the product, a drum pedal for the video game RockBand, failed outside the Named Plaintiffs' warranty period.  Given the policy concerns about extending consumer expectations of value beyond the warranty period, it is easy to understand why the *Morgan* court ruled as it did.

### V.      NAMED PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES

#### A.  As a Matter of Law, Named Plaintiff Ritz Was Not Required to Provide Notice to HP While The Express Warranty Was In Effect.
#### B.

1

2

HP, as it did in its first Motion to Dismiss, urges dismissal of Named Plaintiff Ritz's warranty claims because even though he experienced the problem during the warranty period, he

3

did not personally notify HP of the defect until after the warranty expired.

4

With respect to both the express and implied warranty claims, per Massachusetts law,

5

lack of notice is not a defense to a breach of warranty action unless the defendant can show that

6

it was prejudiced by the lack of notice. *See, e.g.,* ALM GL ch. 106, § 2-318 ("Failure to give

7

notice shall not bar recovery under this section unless the defendant proves that he was

8

prejudiced thereby.").   By its terms, the statute applies to both express and implied warranty

9

claims, and specifically prohibits a manufacturer from attempting to limit or exclude the terms of

10

the statute.[4]   As one Massachusetts court explained:

11

12

13

14

15

> A failure to give timely notice of breach of warranty, if prejudicial
> to the defendant, constitutes a defense." … However, a lack of
> prompt notice will only act as a defense if the defendant proves
> that he was prejudiced by the delay. The burden of proof is on the
> defendant to prove 1) that the delay was unreasonable and 2) that it
> was prejudiced by the delay. **In Massachusetts, both issues are
> normally jury issues.** *Sacramona v. Bridgestone/Firestone, Inc.,*
> 106 F.3d 444, 449 (1st Cir. 1997).

16

*New London County Ins. Co. v. Broan-NuTone, LLC*, 21 Mass. L. Rep. 272 (Mass. Super. Ct.

17

2006)(emphasis supplied).

18

In the face of this statute, HP now argues that its contractual agreement with Mr. Ritz

19

requires him to give notice, irrespective of the statute.   That is clearly incorrect, as the statute

20

supersedes, and in fact dictates, the terms of the warranty. Nor can HP's suggestion that this

21

22

[4] The full text of the statute is as follows:

23

24

25

26

27

Lack of privity between plaintiff and defendant shall be no defense in any action
brought against the manufacturer, seller, lessor or supplier of goods to recover
damages for breach of warranty, express or implied, or for negligence, although
the plaintiff did not purchase the goods from the defendant if the plaintiff was a
person whom the manufacturer, seller, lessor or supplier might reasonably have
expected to use, consume or be affected by the goods. The manufacturer, seller,
lessor or supplier may not exclude or limit the operation of this section. Failure to
give notice shall not bar recovery under this section unless the defendant proves
that he was prejudiced thereby. All actions under this section shall be commenced
within three years next after the date the injury and damage occurs.

28

ALM GL ch. 106, § 2-318

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

statute applies only to breaches of warranty that result in personal injury be countenanced; the courts of Massachusetts have applied it in cases in which a plaintiff seeks monetary damages for a defective product.  *See, e.g Slater v. Burnham Corp*. 343 NE2d 885 (Mass. App. 1976) (defective low water cut off device); *Burnham v. Mark IV Homes, Inc.*, 441 NE2d 1027 (Mass. 1982)(defective roofs on modular homes); *Iannacchino v. Ford Motor Co.,* 21 Mass. L. Rep. 661 (Mass. Super. Ct. 2006)(aff'd in party and rev'd in part, 451 Mass. 623 (Mass. 2008) (defective automobile door latches).

Moreover, HP's written warranty contains no requirement that notice be given during the one year warranty period. SAC Ex. 3. Instead, the warranty provides that the purchaser shall be "entitled to warranty service according to the terms and conditions of this document if a repair to your HP Product is required within the Limited Warranty Period." Certainly, a repair is required at the point that a defect becomes manifest, whether or not HP is notified of the need for repair. At the very least, this issue raises a question of fact.  Named Plaintiffs raised this issue in connection with the prior Motion to Dismiss, and HP remains unable to identify the portion of the warranty containing the requirement that it be given notice during the period the warranty is in effect.

That these issues are jury issues is reason enough to reject HP's notice argument. There is, however, an additional reason. Named Plaintiffs allege that HP knew of the defect during the time Mr. Ritz's warranty was in effect (SAC ¶ 38, 39) and that it received a large number of complaints about the jumping cursor problem (SAC ¶ 24, 38, 46) and so had long been on notice that a significant problems exists with these computers.

**C.   Named Plaintiffs Adequately Allege That The Computers Were Unfit For Their Ordinary Use**

HP seeks dismissal of Named Plaintiff Ritz's claim for breach of the implied warranty of merchantability on the ground that the complaint does not sufficiently allege that the defect rendered the computer unmerchantable.  Named Plaintiffs have alleged:

> 2. The design of the notebook causes the cursor to move around randomly on the screen, rendering the computer unusable and unfit for its ordinary and intended purpose.

23

1

2      22. In the case of the computers at issue, the operation of the
       cooling fan continually draws the cursor to the lower right hand
3      portion of the screen. This significantly interferes with normal
       operation of the notebook.
4

5      23. Sophisticated users have figured out that the problem can be
       temporarily resolved by disabling the "tablet" or "touchscreen"
6      functions of the computer in the computer's hardware profile.
       These functions are the distinguishing characteristic of these
7      computers. Thus, the defect present in these computers affects the
       very essence of unique features of these computers.
8

9

As HP notes, a merchantable product is one that is, *inter alia*, fit for its ordinary purpose.  ALM

10    GL ch. 106, § 2-314.   Named Plaintiffs have not only stated that the computers are unfit for their

11    ordinary purpose, they have also described the defect in detail, pleaded that the defect

12    "substantially interferes with normal operation of the notebook" and stated  that to resolve the

13    problem the computer's defining feature must be disabled.   Named Plaintiffs have plausibly

14    described a circumstance in which the computers may be found to be unfit for their ordinary

15    purpose.  Whether the degree to which the defect is experienced results in a breach of the

16    warranty is unquestionably a factual issue.  Massachusetts courts traditionally so hold.  *See, e.g.*

17    *Santosuosso v. Gibbs Ford, Inc.,* 1992 Mass. App. Div. 167, 169 (Mass. App. Div.

18    1992)("Merchantability and fitness are questions of fact to be resolved by the trial court, see

19    *Back v. Wickes Corp.*, 375 Mass. 633, 641, 378 N.E.2d 964 (1978), as is the issue of any breach

20    of implied warranties. See, e.g., *Bliss v. Elbery Motor Corp.*, 1984 Mass. App. Div. 5, 7.").

21         **D.  Named Plaintiff Baba Has Adequately Pleaded A Claim For Breach Of Express
            Warranty.**
22

23          Named Plaintiff Baba alleges that HP had several opportunities to repair his computer.

24    Mr. Baba contacted HP on numerous separate occasions when the problem first occurred, and

25    was told to perform various software fixes.   SAC ¶ 29.  Mr. Baba was next told to take the

26    computer to the Geek Squad for repair.   The Geek Squad told him it was familiar with the

27    problem, and *that it could not be repaired*.  SAC ¶ 30.   Mr. Baba was next instructed to return

28    his computer to HP.  HP returned the computer to him with an indication that the screen had

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

been replaced.  It also surreptitiously reduced the computer's processor speed to 50% of its capacity.  SAC ¶ 31-33.  Mr. Baba again contacted HP, and was not offered a satisfactory repair. SAC ¶ 34.

 In the face of these allegations, HP asserts that it is entitled to an apparently unlimited number of repair attempts.   It cites no authority for this position.   Certainly, its argument finds no support in the language of the warranty itself, as it is silent on this issue. Beyond that, the argument does not belong in a Motion to Dismiss, as it cannot be said that given the allegations of the Complaint, Named Plaintiffs will be unable to prove any set of facts entitling them to relief.

**CONCLUSION**

 For all of the reasons stated herein, Named Plaintiffs respectfully request that HP's Motion to Dismiss or Strike be overruled. To the extent that the Court believes that the allegations of the SAC are deficient in any respect, Named Plaintiffs respectfully request the opportunity to amend the SAC.

Dated:  October 7, 2010       Respectfully submitted,

             /s/Barbara Quinn Smith    
           Barbara Quinn Smith (Ohio Bar 0055328)
           (Pro Hac Vice)

           Thomas K.Caldwell (Indiana Bar 16001-49)
           (*Pro Hac Vice*)
           T. John Kirk (Indiana Bar 27202-29)
           (*Pro Hac Vice*)
           **MADDOX HARGETT & CARUSO**
           10100 Lantern Road
           Suite 150
           Fishers, IN 46038
           Telephone: 317-598-2040
           Facsimile: 317-598-2050

           Scott R. Kaufman, SBN 190129
           1400 Coleman Ave., Suite F-26
           Santa Clara, CA  95050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (408) 727-8882
Facsimile: (408) 727-8883
lemonatty@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 7, 2010.

Dated:  October 7, 2010

Respectfully submitted,
/s/ Barbara Quinn Smith
Barbara Quinn Smith

26