**\*E-Filed 1/28/11\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID BABA and RAY RITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant._____/ | No. C 09-05946 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiffs David Baba and Ray Ritz bring this suit against defendant Hewlett-Packard (HP) seeking to represent a class of consumers who purchased allegedly defective notebook computers sold by the company. They contend that HP's TX 2000 and TX 2500 series computers suffer from a defect that causes the cursor to move to the lower right portion of the screen and that HP violated unfair competition and consumer protection laws by making material misrepresentations or omissions about the problem. HP filed a motion to dismiss plaintiffs' second amended complaint[1]

---

[1] On June 16, 2010, the Court issued its Order granting HP's motion to dismiss plaintiffs' first amended complaint (FAC). *See Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 U.S. Dist. LEXIS 59747 (N.D. Cal. June 16, 2010).

(SAC) and on December 2, 2010, the Court heard oral argument. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

According to the SAC, Baba purchased a TX 2000 series computer in Arizona on November 29, 2008. The computer at issue is a "tablet" or "touchscreen" that allows the user to operate it with a stylus or fingertip instead of a keyboard or mouse. After approximately six months, Baba's wife began experiencing problems with the cursor moving to the lower right portion of the screen. Baba contacted HP about the problem "on multiple occasions," but none of the procedures suggested by HP eliminated the problem. HP then directed Baba to take his computer to the "Geek Squad" at Best Buy for repair. The Geek Squad stated it was aware of the "jumping cursor" problem, but was unable to fix it. Eventually, Baba sent the computer to HP in Fremont, California for warranty service. HP returned Baba's computer, informing him that it had replaced his screen. Although HP did not indicate that the computer's processing speed had been changed, within two weeks Baba noticed that it had been reduced to 50% of its capacity. After resetting the processor to its normal speed, the jumping cursor returned. Baba "immediately contacted" HP and requested a proper repair, but the company "did not offer to satisfactorily repair the computer."

Ritz purchased a HP TX 2000 series computer in Massachusetts on March 25, 2008. Approximately three to five months later, he began "sporadically experiencing" the jumping cursor defect. Initially, he attempted to fix the problem by adjusting the computer's settings. Around May 2009, Ritz first contacted HP through its online customer support. It directed Ritz to make various changes to settings and software, none of which eliminated the problem. HP offered to sell Ritz telephone support for $49, suggesting that its service representatives had received more advanced training than the online support staff.

Plaintiffs allege that a defect, namely the location of the cooling fan, is responsible for drawing the cursor to the lower right corner of the computer's screen. They further contend that HP knew the computers experienced a "significant and disabling problem with a jumping cursor" at the time Baba made his purchase. In support of this allegation, their SAC includes sixty-six Internet postings written between May 17, 2008 and May 31, 2010. Twenty-six of the cited complaints

appeared prior to Baba's purchase in November 2008, but none were made prior to Ritz's transaction. Of these twenty-six complaints, only three were posted at a forum hosted on HP's own website. The remaining complaints were available on third-party Internet sites. Nine messages posted on the non-HP sites indicate that the author had contacted HP about the jumping cursor problem at a time prior to Baba's purchase. Based on these contentions, plaintiffs raise four claims: (1) violation of California's Unfair Competition Law (UCL); (2) violation of California's Consumer Legal Remedies Act (CLRA); (3) breach of express warranty; and (4) breach of the implied warranty of merchantability.

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). If the complaint does not meet this standard, the defendant may move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if the claimant either does not raise a cognizable legal theory or fails to allege sufficient facts to support a cognizable claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Thus, while a legally sufficient complaint does not require "detailed factual allegations," it must contain more than "unadorned" assertions of harm or bare legal conclusions without factual support. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion to dismiss, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Furthermore, Federal Rule of Civil Procedure 9(b) requires that "[in] allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must plead the "who, what, where, when, and how" of the claimed misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Defendants must be provided notice of "particular misconduct," such that they may "defend against the charge" beyond a general denial of wrongdoing. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted).

IV.  DISCUSSION

A.     CLRA

The Ninth Circuit has held that CLRA and UCL claims based on an alleged fraudulent course of conduct are subject to the heightened pleading standard of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  In this case, plaintiffs allege that HP knew of but concealed the jumping cursor defect and made false representations about the computers' functionality and warranty.  SAC ¶ 46.  As such, plaintiffs' claims are grounded in fraud and must be averred with particularity as to the circumstances of HP's alleged misrepresentations or omissions.  Although plaintiffs' first claim is for violations of California's UCL, it encompasses an alleged CLRA claim, which therefore will be addressed first.

In claim two, brought by plaintiff Baba alone, he contends that HP has engaged in unfair methods of competition or deceptive acts related to the sale of consumer goods as prohibited by the CLRA.  *See* Cal. Civ. Code § 1770(a) (proscribing deceptive acts or practices undertaken in a transaction intended to result or resulting in the sale or lease of goods or services to any customer.)[2]  In the SAC, Baba contends that HP made misrepresentations including: that the computer had tablet or touchscreen capabilities; that the product would be free from defect under normal use during the limited warranty period; that the jumping cursor was caused by user error; that the problem would be resolved by HP's suggested fixes; and that HP would properly repair defects during the warranty period.  SAC ¶ 76.  Allegations that focus on HP's behavior after Baba bought his computer, however, are irrelevant to the question of whether HP made false statements that induced him into making his purchase.  Therefore, Baba's potential CLRA claim depends solely on his contention that HP made false statements about the computer's tablet or touchscreen capabilities and about the computer's warranty prior to his purchase.

---

[2] In particular, plaintiffs allege that HP violated the prohibition against: "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" (§ 1770(a)(5)); "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another" (§ 1770(a)(7)); "[a]dvertising goods or services with intent not to sell them as advertised" (§ 1770(a)(9)); and "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve" (§1770(a) (14)).

The Court previously held that labels such as "tablet" or "touchscreen" describing the type of product being sold and promises to fulfill a limited warranty do not constitute actionable statements under the CLRA without an allegation that the defendant knowingly sold defective products. *See Baba*, 2010 U.S. Dist. LEXIS 59747, at *12-14. In response, Baba attempts to impute knowledge to HP of the jumping cursor problem through complaints posted on the Internet. The SAC includes sixty-six posts made during a two-year period between May 17, 2008 and May 31, 2010. The majority of these posts, however, occurred after plaintiffs obtained their computers. Baba obtained his computer on November 29, 2008 and Ritz purchased one on March 25, 2008. Thus, none of the cited complaints were written prior to Ritz's transaction and only twenty-six were made prior to Baba's purchase. By dropping Ritz from the CLRA claim, plaintiffs appear to admit tacitly that their allegation of HP's knowledge depends solely on the pre-purchase Internet complaints. Of the twenty-six complaints authored prior to Baba's purchase, three appear on a forum hosted on HP's website. Plaintiffs do not allege that HP had knowledge of the contents of the complaints posted on non-HP websites. Nine of the twenty-six posts on non-HP sites, however, indicate that the writer contacted HP to complain about the problem.

As noted in the prior Order, anecdotal complaints without dates or any other information are insufficient to allege that HP possessed knowledge of the putative defect. *Id.* at *15-16. In their SAC, while plaintiffs include the dates of various Internet postings, only three complaints were posted on HP's website prior to Baba's transaction. Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect. *See*, *e.g.*, *Berenblat v. Apple, Inc.*, No. C 08-4969 JF, 2010 U.S. Dist. LEXIS 46052, at *27 (N.D. Cal. Apr. 7, 2010) (holding that complaints posted on Apple's website were "insufficient to show that Apple had knowledge that the [product] in fact was defective and sought to conceal that knowledge from consumers"). Therefore, Baba's allegations of a few complaints on the Internet are insufficient to support his claim that HP engaged in corporate fraud by making misrepresentations and omissions regarding a known defect.

Additionally, Baba alleges that HP violated the CLRA by failing to disclose the jumping cursor problem despite its duty to do so. SAC ¶ 73. A duty to disclose an alleged defect arises under the CLRA if: "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the

defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *See Hovsepian v. Apple, Inc.*, No. 08-5788 JF, 2009 WL 2591445, at *3 (N.D. Cal. Aug. 21, 2009). In this case, no fiduciary relationship exists between the parties. Plaintiffs argue, however, that HP possessed a duty to disclose the alleged jumping cursor problem based on the three remaining grounds. Each of these reasons for finding a duty to disclose, however, is founded on the defendant's knowledge of the material fact it is accused of concealing. For the reasons already stated, Baba fails to allege sufficiently that HP knew of the jumping cursor defect. Therefore, HP was under no duty to disclose it at the time he purchased his computer.

Finally, the CLRA contains an explicit standing requirement, by providing remedies only for consumers who have suffered damage as a result of a violation. *See* § 1780(a); *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof."). In the June 16 Order, plaintiffs' CLRA claim was dismissed, in part, because they failed to allege reliance on any statements or omissions in purchasing their computers. Instead, the FAC advanced only general allegations including, for instance, that the touchscreen feature "is advertised widely by HP and is material to a consumer's decision to purchase these particular models over other notebook computers." FAC ¶ 19.

In the SAC, Baba alleges that he "relied on HP's representations that the computers contain 'tablet' or 'touchscreen' features," that such descriptions were made "at the point of sale," and that these features were material to his decision to purchase the TX model computer. SAC ¶ 28. For the purpose of stating an injury, Baba's contentions are sufficient to aver that he relied on the allegedly false or incomplete product description at the time of his purchase. In order to state a CLRA claim, however, Baba must allege more. As discussed above, he fails to plead sufficiently that HP knew of the defect such that its general product descriptions, including "tablet" or "touchscreen," constitute misrepresentations or omissions. The SAC represents plaintiffs' third attempt to state a CLRA claim. At this point, it appears unlikely that Baba can add sufficient allegations to support his contention that HP either made affirmative misrepresentations or failed to disclose material

information by the date of his purchase.  Therefore, his CLRA claim is dismissed without leave to amend.

B.     UCL Claim

In California, the UCL broadly proscribes business practices that are unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. Code § 17200.  Each prong under the statute constitutes "a separate and distinct theory of liability." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  In claim one, plaintiffs aver that HP is liable under all three theories.  The UCL claim is raised by both Baba and Ritz, unlike the CLRA violation, for which Baba is the sole plaintiff.  In order to bring a UCL claim, a plaintiff must allege injury in fact and loss of money or property as a result of the defendant's unfair competition. *See* Cal Bus & Prof Code § 17204; *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *24-25 (N.D. Cal. Nov. 6, 2009).  Although the standing requirements under the CLRA are more stringent than under the UCL, a plaintiff still must plead and prove actual reliance on the defendant's misrepresentations or omissions. *Id.* at *25, *47.  For his CLRA claim, Baba apparently seeks to rely on Internet postings to support his contention that HP had knowledge of the alleged defect at the time of his purchase.  Plaintiffs' UCL claim also arises out of alleged misrepresentations and omissions by HP and they, therefore, must accordingly plead the company's knowledge of the putative defect for this claim.

1.     Unlawfulness

The violation of almost any federal, state, or local law is independently actionable under the "unlawful" prong of the UCL. *Saunders v. Superior Ct.*, 27 Cal. App. 4th 377, 383 (1992).  In this case, plaintiffs contend that HP violated California Civil Code § 1770 (CLRA), § 1572 (actual fraud), § 1573 (constructive fraud), § 1709 (fraudulent deceit), and § 1710 (defining deceit).  As plaintiffs fail to state a CLRA claim, they likewise cannot maintain a UCL claim founded on a section 1770 violation.  As to the remaining statutes, actual fraud requires a deceptive act, including an assertion or suppression of fact, performed by a party to a contract with the intent to deceive another party or to induce him or her into entering a contract. § 1572.  Constructive fraud involves a breach of duty by one party that misleads another to his prejudice. § 1573.  Fraudulent deceit occurs where one willfully deceives another into changing position to his detriment. § 1709.  For purposes

of a section 1709 claim, deceit is defined as: (1) the suggestion of a fact by one who does not believe it to be true; (2) the assertion of a fact by one who has no reasonable grounds for believing it to be true; (3) the suppression of fact by one with a duty to disclose it or by one who misleads by making a partial disclosure; and (4) the making of a promise without any intention of performing it. § 1710.

The statutes asserted in plaintiffs' UCL claim require that HP either asserted a fact it knew was untrue or had no reasonable basis for believing to be true, suppressed information, breached a duty, made a promise without the intention of performing, or intentionally committed some other deceptive act. In their SAC, plaintiffs rely on the same set of allegations to support their fraud, constructive fraud, and fraudulent deceit claims. Specifically, plaintiffs contend that HP: (1) represented that the notebooks had tablet or touchscreen capabilities without disclosing that these features led to a substantial defect; (2) represented that the notebooks were free from defects; (3) failed to disclose the defect; and (4) represented that it would repair any defect without the intention to perform the promise. SAC ¶¶ 55, 56, 57. As stated above, plaintiffs' allegations that, at the time of their purchases, HP knew of the jumping cursor defect and maintained a duty to disclose it are insufficient. As such, their contentions that HP committed violations of sections 1572, 1573, and 1709 (where deceit is defined by section 1710) are likewise deficient and they therefore fail to state a UCL claim founded on an unlawful act.

### 2. Unfairness

Under the UCL, a business practice is unfair "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Where a plaintiff alleges "a unified course of fraudulent conduct" as the basis of a claim, the pleading of it as a whole must satisfy the heighted standard of Rule 9(b). *Kearns*, 567 F.3d at 1125. Thus, a plaintiff cannot avoid the requirement of pleading fraud with particularity by restating a claim under the "unfair" prong of UCL. *See Hovsepian*, 2009 WL 2591445, at *4 (citing *Kearns*, 567 F.3d at 1127).

In this case, plaintiffs claim that HP violated the UCL by: systematically breaching its warranty contracts; representing that the computers possess tablet or touchscreen capabilities


Case 5:09-cv-05946-RS   Document 55   Filed 01/28/11   Page 9 of 12

without disclosing a substantial defect in the design; continuing to sell computers they knew were defective; and discouraging customers from pursuing their rights under the warranty by providing incorrect information about the cursor malfunction. SAC ¶ 59. Similar to their "unlawful" UCL claim, the alleged unfair conduct requires that HP knew of the defect, yet misrepresented or concealed material information. In this claim, plaintiffs include allegations of unfair practices extending beyond the initial sale of the computers. Namely, they contend that the company systematically breaches warranty contracts and dissuades consumers from obtaining their rights under them. These accusations form part of a unified course of allegedly fraudulent conduct involving HP's handling of the jumping cursor defect. Therefore, plaintiffs must aver the timing and circumstances of any warranty-related misrepresentations with particularity. Here, they merely state their claim in conclusory fashion. Moreover, as before, plaintiffs fail to allege sufficiently that HP had knowledge of the putative defect at the time of any unfair conduct. Accordingly, they fail to state a UCL claim under the "unfairness" prong.

        3.     <u>Fraud</u>

Plaintiffs admit that their UCL fraud claim is based on "the same misrepresentations, omissions and circumstances as those giving rise to their claim under the CLRA." Pl. Opp. at 20:14-16. In other words, plaintiffs accuse HP of knowingly making false statements about the computer's functionality and warranty and failing to disclose a known defect. For some UCL fraud claims, namely those arising from false advertising campaigns, a plaintiff is merely required to demonstrate that the public is likely to be deceived. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Plaintiffs' theory of their claim, however, is not that buyers were misled by the "tablet" description, but that the tablet properties gave rise to a substantial defect that HP knew and failed to disclose to plaintiffs at the time of purchase. As such, plaintiffs' UCL fraud claim requires a plausible basis for asserting that defendants had knowledge of the alleged defect. For the same reasons that plaintiffs' CLRA claim fails, their UCL fraud claim is also unsupported. In sum, plaintiffs' UCL claim under each of the three prongs is dismissed. Although the SAC also represents their third attempt to plead a UCL claim, because of the broad scope of conduct


No. C 09-05946 RS
ORDER GRANTING IN PART MOTION TO DISMISS
9

1  proscribed by the UCL, plaintiffs are granted leave to amend their claim this additional time, if they
2  can do so in good faith.

3  C. Baba's Express Warranty Claim

4  HP's express warranty for the TX 2000 series computer includes representations that the product is free from defects and that if HP receives notice of defects during the warranty period, it will repair or replace the defective product. Baba asserts that HP breached the warranty by failing to repair or replace his defective computer despite his repeated attempts to obtain service during the warranty period. He claims he contacted HP about the jumping cursor "on multiple occasions," but the software updates it suggested did not fix the issue. SAC ¶ 29. At HP's suggestion, he sought assistance from Best Buy, but was told by its employees that it could not repair the problem. SAC ¶ 30. Eventually, Baba sent his computer to the company for warranty service. According to Baba, HP returned the product without telling him that it had reduced the processor speed to 50% of its capacity. After resetting the processor speed, the jumping cursor returned. SAC ¶ 33.

The Court dismissed Baba's express warranty claim in the FAC because he did not allege that he notified HP again after he discovered that the problem was not fixed. In the SAC, Baba states that he contacted HP after the problem returned and demanded a proper repair, but the company did not offer to "satisfactorily repair" his computer. SAC ¶ 34. HP argues that all it can do is offer to repair the computer during the warranty period. Whether the obligations of the warranty were satisfied can only be determined after it has attempted to perform. In this case, however, Baba has alleged that he contacted HP on multiple occasions without obtaining resolution of the problem. Therefore, at the pleading stage, he has stated a claim for breach of warranty and the motion to dismiss is denied.

D. Ritz's Express and Implied Warranty Claims

In the SAC, Ritz asserts claims for breach of HP's express warranty and for breach of the implied warranty of merchantability. Although Ritz contends that he suffered from the jumping cursor problem during the warranty period, he admits he did not contact HP until after the expiration of the product's one-year limited warranty. SAC ¶¶ 35, 36. Despite that fact, he argues for an application of the Massachusetts General Law that would allow him to maintain a breach of contract

claim against the company. Section 2-318 states that "[l]ack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied . . . . Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby." Mass. Gen. Laws ch. 106, § 2-318. Thus, according to Ritz, even though he did not provide "notice" to HP of any problems with his computer within one year, he has stated a breach of warranty claim.

The statute is directed to a plaintiff's obligation to provide notice of a warranty claim as a condition to obtaining relief through litigation. The First Circuit explained: ". . . Massachusetts law embodies a notice requirement for warranty claims. As the rule has been formulated, a plaintiff must give reasonably prompt notice of his warranty claim to the potential defendant; if he fails to do so, and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations." *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 448-449 (1st Cir. 1997).[3] In this case, HP has not averred that it has been prejudiced by the timing of Ritz's lawsuit and therefore his warranty claims are not barred by the notice requirement of section 2-318. A separate question, however, is whether Ritz has alleged sufficient facts to state a breach of express warranty claim in the first instance. Under the terms of the limited warranty, HP was obligated to provide service if a repair was required within one year, but Ritz admits that he did not contact the company during that time. *See* SAC Ex. B.[4] On the facts averred, HP did not commit any breach of contract and therefore the question of the timeliness of a warranty claim does not arise. Accordingly, Ritz's express warranty claim is dismissed without leave to amend.

---

[3] As the Court further described: "The reason for this rule in Massachusetts is that warranty liability combines features that place potential defendants at serious risk: strict liability, lack of privity, and a statute of limitations that may run not from the sale but from the injury. As a counterweight, the requirement of prompt notice allows the defendant to gather evidence in timely fashion; without such notice, a defendant could easily be surprised by a lawsuit many years after selling its products." *Sacramona*, 106 F.3d at 449 (citations omitted).

[4] HP's Limited Warranty states: "You are entitled to warranty service according to the terms and conditions of this document if a repair to your HP Product is required within the Limited Warranty Period." The limited warranty period provided for an HP computer is one year. Ritz's alternative argument, that HP is obligated to provide service indefinitely as long as he avers that the computer "required" repair within one year, is not a plausible interpretation of the limited warranty.

Ritz also claims that HP breached the implied warranty of merchantability, which provides that a product must be fit for its ordinary purpose. *See* ALM GL ch. 106, § 2-314. In the SAC, Ritz contends that he sporadically experienced the jumping cursor problem approximately three to five months after purchasing his computer. He first contacted HP about the problem in May 2009, at least nine months after experiencing the problem. SAC ¶ 36. While the SAC generally avers that the defect "significantly interferes with normal operation," the complaint fails to make any further allegations regarding Ritz's experience. SAC ¶ 22. Namely, Ritz does not suggest that he was unable to utilize his computer for its ordinary purpose. Therefore, the breach of implied warranty claim is dismissed with leave to amend.

## V. CONCLUSION

Baba's CLRA claim is dismissed without leave to amend. Plaintiffs' UCL claim is dismissed with leave to amend. The motion to dismiss Baba's express warranty claim is denied. Ritz's express warranty claim is dismissed without leave to amend and his implied warranty claim is dismissed with leave to amend. Any amended complaint must be filed within twenty days of this Order.

IT IS SO ORDERED

Dated: 1/28/2011

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE